### STATE v. McCOMB*
(No. 1223; Oct. 5, 1925; 239 Pac. 526)

CRIMINAL LAW—MANSLAUGHTER—MOTOR VEHICLE—CRIMINAL NEGLI-
GENCE—HOMICIDE—INSTRUCTIONS—SPEED LIMIT—WITNESSES—EVI-
DENCE—EXCEPTIONS—INDICTMENT AND INFORMATION.

1. In prosecution for manslaughter, an instruction given in accordance with Comp. St. 1920, § 3487, and section 3493, that jury were authorized to find defendant negligent as matter of law if they found he exceeded 20 miles per hour, and was guilty of a felony if death resulted therefrom, was prejudicial error, in view of repeal of section 3487 by Laws 1921, c. 69.

2. Negligence relied on, to constitute manslaughter under Comp. St. 1920, § 7070, must be more than merely ordinary negligence, and must be culpable or criminal in its nature.

3. Carelessness by reason of driving at a speed that is unreasonable or such that is likely to endanger life or limb is not necessarily criminal carelessness, within the meaning of Comp. St. 1920, § 7070, providing for punishment for manslaughter.

4. In prosecution for manslaughter, instruction that no motor vehicle shall be operated in town or city at a speed greater than 20 miles per hour, and that driving at a rate of speed so as to endanger life or limb of another constitutes a felony under statute, if death ensues therefrom, was erroneous because there was no such statute, in view of repeal of Comp. St. 1920, § 3487, by Laws 1921, c. 69.

5. In manslaughter prosecution, where court instructed jury that no motor vehicle shall be operated in city or town at a greater speed than 20 miles per hour, and that, if, in driving it so as to endanger life or limb, death accrues therefrom, such act constitutes a felony under statute, such instruction was erroneous, as confusing, since jury might have believed that felony to which court referred was identical with felony that constituted manslaughter.

6. In prosecution for manslaughter, where state attempted to prove defendant under influence of liquor at time of decedent's death, *held*, that such evidence overwhelmingly showed defendant was not under influence of liquor as contended, and had not even been drinking.

7. Where state's witness, in answer to question of state whether defendant had been drinking, said he did not know and did not have any knowledge or information on which he could so state, the state could not impeach him by showing that he made contradictory statements before coroner's jury.

8. In prosecution for manslaughter, where state sought to impeach its own witness, evidence that witness had testified before coroner's jury that he supposed that accused had been drinking, that somebody told him so, was erroneously admitted since hearsay.

9. Admission of evidence, not excepted to on trial, is not considered on appeal.

10. An indictment which charged that defendant ''did then and there willfully and unlawfully kill one Lavoyle Duggins, the said Lavoyle Duggins being then and there a human being,'' without setting out the facts by which the unlawful killing was done, was sufficient under Comp. St. 1920, § 7464.

*See Headnotes (1) 17 C. J. p. 343 (Anno) (2) 29 C. J. p. 1154; (3) 29 C. J. p. 1156; (4) 30 C. J. p. 408 (Anno); (5) 30 C. J. p. 409; (6) 40 Cyc. p. 2701; (7) 40 Cyc. p. 2748; (8) 17 C. J. p. 77; (9) 30 C. J. p. 101.

Appeal from District Court, Natrona County; Cyrus O. Brown, Judge.

A. C. McComb was convicted of. manslaughter, and he appeals. Material facts are stated in the opinion.

*M. F. Ryan* for appellant.

The opening statement of the prosecutor was untrue and prejudicial; Johnson v. State, 29 Wyo. 121; Nicholson v. State, 18 Wyo. 311; Thompson on Trials, 2nd ed. 277; Hampton v. State, 88 Miss. 257; People v. Montague, 39 N. W. 585; Scott v. State, 20 So. 468; State v. Hannett, 57 Vt. 83; People v. Fielding, 158 N. Y. 542; Vaughan v. State, 24 S. E. 885; House v. State, 8 Tex. App. 567; Childress v. State, 5 So. 775; Martin v. State, 63 Miss. 505; the court erred in admitting evidence taken at the inquest in the absence of the accused; Whitehurst v. Commonwealth, 79 Va. 556; Cox v. Royal Tribe, 42 Ore. 365; State v. Campbell, 1 Rich. S. C. 124; Hall v. State, Ala. 1903; Kirby v. State, 5 S. W. 165; Underhill's Criminal Law, 3rd. 366; Wigmore on Ev. 904; State v. Arnold, 5 Wyoming. 739; Horn v. State, 12 Wyo. 80; Head v. State, 50 S. W. 353; Jackson v. Crilly, 26 Pac. 331; the court erred in admitting opinion evidence as to speed; People v. Ernstrong, 14 Cal. App. 708; State v. Rasco, 239 Mo. 335; Sweat v. State, 77 Tex. Cr. 209; also in admitting opinion evidence as to whether accused had been drinking; State v. Newcomb, 220 Mo. 54; Hopt. v. People, 110 U. S. 574; and in permitting prosecution to impeach its own witnesses, Sec. 5809 C. S.; Underhill's Crim. Ev. Chap. 28; State v. Beede (Ia.) 130 N .W. 714; the court erred in permitting the reading of evidence taken at the inquest; Underhill's Crim. Ev. 376; Crago v. State, 28 Wyo. 215; the court erred in giving instruction numbered 3 which was based on the automobile law; 3487-3493 C. S. Sec. 3487 having been repealed by laws of 1921, Chap. 69; Palmer v. State, 9 Wyo. 40; 2 Thompson on Trial, 2326; the court erred in refusing defendant's requested instructions on the question of negligence; 21 Cyc.

996-999; in its relation to manslaughter; State v. Dorsey, 20 N. E. 777; the court erred in refusing defendant's motion for arrest of judgment; Littel v. State, 33 N. E. 417; the information is defective; McGinnis v. State, 16 Wyo. 72; Brown v. State, 11 N. E. 447.

*David J. Howell*, Attorney General and *L. C. Sampson*, Deputy Atty. General for defendant in error.

Assignments of error for admission of certain evidence at the trial are not supported by objections made at the trial; the reasons assigned, are showings made where the court erred in admission or rejection of evidence; error assigned as to misconduct of counsel for the prosecution in his opening statement to the effect; that accused had been driving an automobile 30 miles per hour, and had been drinking was not prejudicial for the reason that there was evidence to sustain the statement. Prosecutors often fail in whole or in part to sustain what they expect to prove by competent evidence, but it is not held to be prejudicial; Nichols v. State, 18 Wyo. 113; we do not concede that the automobile statute under which instruction numbered 3 was framed had been repealed at the time of the trial.

Blume, Justice.

Defendant was informed against for manslaughter and is charged with having unlawfully killed Lavoyle Duggins, a young girl, on August 21, 1923, in the city of Casper, Wyoming. He was convicted by the jury and sentenced by the court to imprisonment. From this judgment he appeals.

The record is not clear. Directions, corners and sides of streets are left unintelligible. A map was introduced in evidence, but was not sent to this court. If, accordingly, we make a mistake in the statement of facts, it is due to the condition of the record before us. The unfortunate death occurred about as follows: Shortly after midnight on the day in question the defendant was driving an automobile, going west on West Yellowstone Highway, a street in said

city running in an easterly and westerly direction. He had with him four others, one Quinn, one Whitlock, the decedent and her mother. Arriving at the intersection of West Yellowstone Highway with Oak Street, he turned south on the latter street, which runs north and south. This street is narrow, not to exceed 30 to 35 feet wide. Along the west curb, but three feet from it, and about 50 feet south of the intersection stood a truck, 12 feet wide, with ten-inch oil-well casings sticking out of the back end of it. Opposite the truck along the east curb of Oak street, stood a Ford automobile. Hence the passage way between the two vehicles was narrow. The intersection had no street light, trees and a high embankment on the west side of Oak street made the place where the truck was standing very dark and made it apparently impossible to see the truck until right upon it. A depression, about four inches deep, existed on the west side of Oak street, and is claimed, by the defendant, to have caused his car to swerve toward the casing above mentioned. Defendant also claims that another automobile in the intersection interferred with him in some way, the manner of which is not clear. In any event, when defendant turned south on Oak street, he came too near to the casings, part of which hit the center of defendant's car, projecting forward into the back seat where decedent sat, hitting her head and killing her almost instantly. The case was tried upon the theory that defendant was guilty of criminal negligence, and to sustain such claim the state sought to show that defendant was under the influence of intoxicating liquor and that he drove at a reckless rate of speed. We shall refer to the former point later. There was some evidence introduced tending to show that defendant was, shortly before the decedent was killed, driving at the rate of 30 miles per hour, while the evidence on the part of the defendant, including that of Whitlock, who testified that he saw the speedometer of the defendant's car, shows that he was driving at about 17 and not to exceed 20 miles per hour, and the defendant insists that the death was

caused, not by his negligence, but by reason of the fact that the truck with its casings was negligently left standing in a dark place, where its presence could not reasonably have been anticipated by him.

1.   The case was, by instruction numbered four, submitted to the jury upon the theory that the defendant could not be convicted, unless he was criminally negligent. But by instruction three, to which an exception was duly taken, the court stated to the jury the following:

.''You are instructed that the laws of the State of Wyoming provide:—'No motor vehicle shall be operated in any city or town at a speed greater than 20 miles per hour or at a speed so as to endanger the life or limb of any person, having regard for the use and condition of the highway.' You are further instructed that the laws of this state provide, 'If any person operating a motor vehicle in violation of the provisions of this chapter shall by so doing seriously maim, injure or disfigure any person or persons or cause the death of any person or persons, he shall be guilty of a felony.' ''

It will be noted that by this instruction, though the defendant was not charged with a crime under the automobile law, but under the law relating to manslaughter, the court told the jury, in effect, that defendant was, under the statute, guilty of a felony, if he drove his car at a rate of more than 20 miles an hour and if the death of decedent resulted therefrom. The instruction was doubtless given in accordance with section 3487 W. C. S. 1920, part of the Automobile Law contained in chapter 214 of said Compiled Statutes, said section reading in part as follows: ''No motor vehicle shall be operated within any city or town at a speed greater than twenty miles per hour, nor at a rate of speed such as to endanger the life or limb of any person, having regard for the traffic, use and condition of the road or other public highway,'' and in accordance with section 3493 W. C. S. 1920, which provides that if a person violates the

provisions of the Automobile Law, and death or serious injury occurs as a result thereof, he shall be guilty of a felony and fined not less than two hundred dollars or imprisoned in the penitentiary for not less than one year nor more than ten years. But in 1921 the Legislature, by chapter 69 of the Session Laws of that year, repealed all of said chapter 214 of the C. S. 1920, including said section 3487, and while that section was largely reenacted by section 19 of said chapter 69, the provisions quoted above were entirely left out, and no specific rate of speed for automobiles, to be maintained in cities or towns, is fixed in the later law, which was in force at the time of the trial of said defendant. The state's evidence, as to the rate of speed at which defendant was driving, does not, at best, in view of all the evidence in the case, seem highly convincing, and the instruction given, erroneous as it was, that the jury were authorized to find the defendant negligent, as a matter of law if they found that he exceeded a speed of twenty miles per hour, nay, even that he was guilty of a felony, if death resulted therefrom, necessarily greatly influenced the jury in arriving at their verdict, and it must accordingly be held to have been prejudicial.

2.    The instruction given was erroneous in another respect. The second proposition contained therein stated substantially, so far as pertinent here, that no motor vehicle should be operated at a speed so as to endanger the life or limb of any person and that to cause the death of any one in violation thereof constitutes a felony under the statute. The clause to which the court referred, relating to cities and towns, was, as heretofore stated, stricken out of the statute by the Legislature in 1921 and while it is doubtless true, without reference to a statute, that no person should operate a vehicle so as to endanger the life or limb of any person, the violation thereof, if death results therefrom as the proximate cause, is not made a felony by the statute to which the court made reference, when the vehicle is operated in a city or town, and would be no felony at all unless

the negligence in operation constitutes culpable or criminal carelessness, in which event it may be manslaughter under section 7070 W. C. S. 1920, which defines that crime as follows:

"Whoever unlawfully kills any human being without malice express or implied, either voluntarily upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty years."

There are, it is true, cases holding that an unlawful killing, as the result of want of ordinary care, may constitute manslaughter, upon the theory that unlawful killing of another without malice, involuntarily, but in the commission of an unlawful act (4 Blackstone's Com. 191) may be manslaughter, and that want of ordinary care is an unlawful act. Clemens v. State, 176 Wis. 289, 185 N. W. 209, 21 A. L. R. 1490, and cases there cited. But that rule was criticised in the case just mentioned, and when our statute provided that the negligence must be culpable or criminal—terms evidently used synonymously—it would seem that it meant to provide specifically that the unlawful act relied on in manslaughter, must, if it consists of negligence, be more than ordinary negligence, and must be culpable or criminal in its nature. And that seems to be the general rule. Note 90 A. S. R. 571, 572, 574 and 575; State v. Dorsey, 118 Ind. 167, 20 N. E. 777, 10 A. S. R. 167; People v. Barnes, 182 Mich. 179, 148 N. W. 400; People v. Adams, 289 Ill. 339, 345, 124 N. E. 575; State v. Clark, 196 Ia. 1134, 196 N. W. 82, 84; Schultz v. State, 89 Neb. 34, 130 N. W. 972, 33 L. R. A. N. S. 403; State v. Goetz, 83 Conn. 437, 76 Atl. 1000, 30 L. R. A. (N. S.) 458; People v. Schwartz, 298 Ill. 218, 131 N. E. 806, 29 C. J. 1154. In People v. Barnes, supra, the court said:

"to make an act carelessly performed resulting in death a criminal one, the carelessness must have been gross, implying an indifference to consequences; and the term 'gross negligence' means something more than mere negligence. It means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent."

And carelessness by reason of driving at a speed that is unreasonable or is such as is likely to endanger life or limb is not necessarily criminal carelessness within the meaning of our statute providing for punishment for manslaughter. Thus in State v. Clark, supra, the court said:

"Instruction 10 is also subject to legal criticism, since under it, if the jury found that the defendant failed 'to have the motor vehicle under control or failed to drive said vehicle in a careful and prudent manner or failed to drive it at a rate of speed not endangering the life of other persons, or in driving the said vehicle at an unlawful rate of speed caused the injury to Edna Morgan which resulted in her death,' the jury could not do otherwise than convict. This instruction eliminates the gross negligence and reckless indifference to life which supplies the intent in criminal law in a case of this character."

In Wright v. State, 90 Tex. Crim. 435, 235 S. W. 886, the court said:

"It is a fairly well known rule that if one, by an act which is a violation of law, injures another, he is guilty per se of actionable negligence; but it cannot be said as a matter of law or fact that one who drives a vehicle at a greater rate of speed than 10 miles per hour, or in a manner not prudent or careful, is ipso facto guilty of gross negligence. Gross negligence is not an expression of frequent use in criminal procedure, and, standing alone, perhaps lacks that clearness of definition and exactness of application which

ought properly to characterize terms used in defining an act intended to be made penal. In civil cases the courts of this state define it as such negligence as evinces a reckless disregard of human life or bodily injury, or such conscious indifference to the rights of others as amounts to an intentional violation of them. Southern Cotton Press Co. v. Brady, 52 Tex. 587; Mo. P. Ry. Co. v. Shuford, 72 Tex. 165, 10 S. W. 408.''

The court, in fact, under instruction 4—which was apparently copied from State v. Goetz, supra—submitted the case to the jury, as heretofore stated, upon the theory that the defendant could not be convicted unless they should find him to have been criminally negligent within the meaning of the statute relating to manslaughter. But in further stating, in effect, in instruction 3, that driving at a rate of speed so as to endanger the life or limb of another, constitutes a felony under the statute, if death results therefrom, was not only erroneous because there is no such statute when a homicide occurs as the result of negligent speed in cities and towns, but it was also confusing, since the jury might have believed that the felony to which the court then referred, was identical with the felony that constitutes manslaughter, and would naturally lead them to believe that they might convict the defendant of the crime charged, if they found him guilty of driving at a rate of speed likely to be dangerous to life and limb, even though there was absent ''the gross negligence and reckless indifference to life which supplies the intent in criminal law in a case of this character.'' See Wright v. State, supra.

This is as far as we need to go in discussing the immediate question before us. But lest our opinion might hereafter be misunderstood, it may be advisable to briefly refer to the situation when the statute fixes a rate or manner of speed, making a violation thereof unlawful, and death results from such unlawful speed. In reading our automobile law, our attention has naturally been directed to the dis-

tinction seemingly made in regard to speed within, and speed without, incorporated cities and towns. The latter are, by section 18 of chapter 69, Session Laws 1921, authorized to "regulate the speed of motor vehicles, but not to a speed less than twenty miles per hour" with stated exceptions. No statutory penalty is attached to the violation of the speed limit fixed under this provision. Section 19 of the same act provides that no person shall operate a motor vehicle on any public highway *"outside of a city or town"* at a speed greater than is reasonable and proper, nor at a rate of speed such as to endanger the life or limb of any person or animal. To violate these provisions is made a misdemeanor by section 30 of the same act, which also provides: "provided, however, if any person operating a motor vehicle in violation of the provisions of this Act, shall, by result of so doing seriously maim, injure or disfigure any person or persons or cause the death of any person or persons, such person shall be guilty of a felony, and upon conviction thereof, shall be fined not less than two hundred dollars, nor more than five hundred dollars, or be imprisoned in the penitentiary for not less than one year nor more than ten years; or such person may be held for a greater offense if the same be ordered by coroner's jury."

It will be noted that the foregoing provision creates a separate offense, distinct from that of manslaughter. But it is held by many of the cases that where the statute fixes the rate of speed and makes a violation thereof a misdemeanor, and death results as the proximate cause thereof, the offender is guilty under provisions of law, also contained in section 7070, W. C. S. 1920, to the effect that "whoever kills any human being without malice  *  *  * involuntarily, but in the commission of some unlawful act  *  *  * is guilty of manslaughter." That is true, for instance, where a specific maximum rate is fixed—at 25 miles an hour, for instance. People v. Kelly, (Cal. App.) 234 Pac. 110; State v. Long, 7 Boyce (Del.) 397, 108 Atl. 36; Berry, Automobiles, sec. 1567. (But see, apparently con-

tra, State v. Clark, supra; note 90 A. S. R. 574, and cases cited.) The same rule has been applied when the speed is regulated by statute in general terms, as under section 19 of chapter 69, Session L. Wyo. 1921, namely that no motor vehicle shall be operated at a rate of speed so as to endanger life or limb. State v. Schaeffer, 96 O. S. 215, 117 N. E. 220, L. R. A. 1918 B 945, Ann. Cas. 1918 E 1137; Held v. Commonwealth, 183 Ky. 209, 208 S. W. 772. See also seemingly to the same effect State v. Sudderth, 184 N. C. 753, 114 S. E. 828, 27 A. L. R. 1180; State v. Rountree, 181 N .C. 535, 106 S. E. 669; State v. McIver, 175 N. C. 761, 94 S. E. 682. If this rule were applied in this state, an unlawful homicide committed in exceeding the speed fixed in section 19 of said Act of 1921, supra, would at the same time be punishable under sec. 30 of said Act as a felony by a penalty varying from a fine of $200 to imprisonment in the penitentiary for not more than ten years, and under sec. 7070, W. C. S. 1920, punishing manslaughter at not to exceed twenty years imprisonment in the penitentiary. Whether or not the provision that a violator of the automobile law "may be held for a greater offense if the same be ordered by coroner's jury" has the effect that a violation of said law shall, in the absence of an order from a coroner's jury, be prosecuted only under the automobile act, is a question not argued or presented by the record, and we do not pass upon it, but have deemed it advisable to call attention to the seeming incongruities under our law.

3.   The state attempted to prove that the defendant was under the influence of intoxicating liquor at the time when the decedent was killed. The only witness testifying at all favorably to the state in this patricular was one Ryan, desk sargent of Casper, who stated that "there was liquor on his breath," although he would not state that the "man was drunk," and he did not even state that defendant was under the influence of intoxicating liquor. All the other testimony in the case, including that of parties who appear to have been wholly disinterested, shows overwhelmingly that

defendant was not under the influence of liquor and had not been drinking. It would seem that, unless the state can produce further testimony on this point in any further trial of the case that the claim of intoxication should be entirely eliminated therefrom. The state sought to strengthen its case by impeaching its own witness E. E. Quinn, who was one of the occupants of defendant's car on the night in question. His testimony relating to the point of intoxication is as follows:

"Q. Now, Mr. Quinn, do you know whether or not Mr. McComb had been drinking that night? A. No sir. Q. Were you then or are you now in possession of any knowledge or information on which you could state whether or not the defendant had been drinking? A. No. Q. Now Mr. Quinn, I will ask you if at the Coroner's inquest, with reference to whether McComb had been drinking or not, I didn't ask you the following questions to which you made the following replies: 'Had McComb been drinking any'. 'A. I never seen him take any drinks, I suppose he was. Is that correct? A. I didn't say I supposed he had been, no sir, I didn't say that. Q. Now the next question: 'Q. What makes you suppose so?' 'A. They said he had, I never saw him take a drink.' Q. Did you testify to that way? A. No, nobody ever told me he was drinking at all.''

Objections were interposed to this line of testimony as hearsay, but the objections were overruled. A like objection to the offer of the testimony given before said coroner's jury on the point mentioned was also overruled, and that testimony was admitted.

The court in admitting such testimony of the witness at the coroner's inquest must have overlooked our decision in the case of Crago v. State, 28 Wyo. 215, 202 Pac. 1099, where the question was discussed at great length. When the witness answered the question whether the defendant had been drinking by stating: ''Not to my knowledge,'' he did not, we think, testify to anything prejudicial to the

state, and is substantially of the same nature as the answer of the witness in the Crago case "I do not remember." But what makes it worse, the witness had stated substantially the same fact before the coroner's jury, only adding "I suppose he was;" and that this supposition was based on statements made by others. Thus the state evidently insisted upon getting into the record this supposition of the witness, based as it clearly was on hearsay, and evidently desired to have such unreliable testimony appear as evidence of a substantive fact—the defendant's intoxication. We pointed out the danger of that in the Crago case, and need not do so again. It may be that the admission of such testimony might not be prejudicial in some cases. But here a young girl's life had been unfortunately snuffed out under tragic circumstances, the manner in which her head was cut by the casing was calculated to inflame the passions, and the prejudice engendered against the defendant would naturally be so much the greater if the jury thought that he was under the influence of intoxicating liquor at the time. Hence it was highly important that the state's evidence on the point in question, weak as it was, should not be bolstered up by testimony which was incompetent from every point of view.

4. The state was also permitted to introduce the testimony of the witness Quinn which he had given before the Coroner's jury in reference to the speed at which the defendant drove his car, and the admission of this testimony is assigned as error. No exception, however, was taken, and we cannot, accordingly, consider the point.

5. It is assigned as error that the court overruled defendant's motion for arrest of judgment on the ground that the information herein is insufficient, because it merely alleges that the defendant "did then and there wilfully and unlawfully kill one Lavoyle Duggins, the said Lavoyle Duggins being then and there a human being," without setting out the facts by which the unlawful killing was done, and it is insisted that such facts should be alleged. Sec. 7464

W. C. S. 1920 provides that in an indictment for man-slaughter "it shall be sufficient to charge that the defendant did unlawfully kill the deceased." That provision was probably taken from Ohio, and an information like that in the case at bar has been held sufficient in at least three different cases decided by the Supreme Court of that state. Wolf v. State, 19 O. S. 248; Williams v. State, 35 O. S. 175; State v. Schaeffer, supra. The foregoing assignment of error should, we think, be overruled.

For the errors herein pointed out, the judgment in this case must be reversed and the cause remanded to the district court for a new trial. It is so ordered.

*Reversed and Remanded.*

POTTER, C. J., and KIMBALL, J., concur.