Lewis Wilson THOMAS, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4641.

Supreme Court of Wyoming.

April 18, 1977.

Donald L. Painter, of Burk & Painter, P. C., Casper, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Frank R.

Chapman, Law Clerk, Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

Lewis Wilson Thomas, appellant herein, was convicted in the District Court of Natrona County on three counts of manslaughter arising from an automobile accident which occurred on July 13, 1974, resulting in the deaths of Lloyd Earl Eldridge III, Pamela Raye Byers, and Laurie Kay Freel. This accident happened about two and one-half miles south of Casper on the Casper Mountain highway. At the time of the accident Thomas was driving the car of Connie Osborn and had Debra Ambler, Laurie Freel, and Larry Ortega as passengers. At the point of the accident there was a slight curve to the left and he lost control of the car, which skidded into the left lane where it hit a motorcycle being driven by Eldridge with Pamela Byers as a passenger. Both occupants of the motorcycle were killed, and Laurie Freel, a passenger in the car driven by appellant, died as a result of the accident. Pertinent material facts will be set out in more detail when they become relevant and necessary to the disposal of appellant's various contentions.

Appellant raises six asserted errors, which will appear in this opinion in the order in which such contentions are discussed. The first contention is as follows:

"SECTION 6–58, supra [W.S.1957], ENACTED IN 1890, WAS REPEALED BY IMPLICATION WITH ENACTMENT OF § 31–232(a) [W.S.1957, C.1967], ENACTED IN 1939,[1] INSOFAR AS § 6–58, supra, FORMERLY RELATED TO VEHICULAR HOMICIDES UNDER CIRCUMSTANCES INVOLVING 'CULPABLE NEGLECT OR CRIMINAL CARELESSNESS'."

The relationship and application of our involuntary manslaughter statute and the so-

---

1. It is not material to the disposition of this case that § 31–232(a), W.S.1957, C.1967, was enacted as § 34, Ch. 225, S.L. of Wyoming 1955, being in the identical language as the 1939 law, which was enacted as § 24, Ch. 126, S.L. of Wyoming 1939.

called negligent homicide law applying to deaths occurring as the result of the operation of automobiles have been obscure and troublesome areas for lawyers and the courts for many years.

Under a different statutory scheme, so far as deaths occasioned by the operation of motor vehicles are concerned, this court called attention to the then incongruity in this area in *State v. McComb*, 33 Wyo. 346, 239 P. 526, 41 A.L.R. 717; and the court in that case, not deeming it properly presented, did not pass upon the question of whether the prosecution should have been under the statute which applied solely to deaths occasioned from the operation of automobiles, but "deemed it advisable to call attention to the seeming incongruities under our law," 239 P. at 530. In 1947, and under a statutory scheme identical to the one presently in effect, this question arose again in *State v. Cantrell*, 64 Wyo. 132, 186 P.2d 539, which involved an attack upon a portion of § 6–58, which will be later discussed. The majority opinion demonstrates the questions and difficulties which arise therefrom; and Justice Blume, with his usual acuity and legal foresight, in a concurrence expressed his concern with the difficulties which were experienced in determining under which statute a defendant should be charged, and thought this of enough importance to suggest careful legislative consideration of these statutes to establish some "rule of guidance for the courts," 186 P.2d at 548. Nothing was done to implement this suggestion. Again, in 1956, in *State v. Wilson*, 76 Wyo. 297, 301 P.2d 1056, 1065, this court noted the confusion arising within this statutory arrangement. We can only note that we still have the statutory scheme to which these criticisms were directed and which has been in no manner changed. The statutes from which this question arises are as follows:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty years." ·Section 6–58, W.S. 1957.

"When the death of any person ensues within 1 year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." Section 31–232(a), W.S.1957, C.1967.

Our inquiry is confined to the question, Did § 31–232(a) and earlier related enactments impliedly repeal that part of § 6–58, which states, "or by any culpable neglect or criminal carelessness," insofar as it affects deaths resulting from the operation of a motor vehicle?

Earlier, in *Cantrell*, supra, it was clearly decided that an implied repeal of the manslaughter statute was not effected insofar as the commission of an unlawful act was concerned, 186 P.2d at 542, but the court definitely refused to answer the query here presented, leaving it for another day. Mr. Justice Blume expressed this dilemma well when he said in *Cantrell*, supra, 186 P.2d at 548, "It is impossible to determine definitely as to whether or not the legislature when it passed these special statutes intended that they should govern in all cases when a death occurs as the result of improper driving of an automobile."

The indictments and information herein all charge the commission of an unlawful act, i. e., driving on the wrong side of the highway and culpable neglect and criminal carelessness. However, the commission of an unlawful act is not before us because the trial judge submitted this charge to the jury:

"Before you can convict the Defendant on the charge of involuntary manslaughter you must find that he acted with culpable neglect or criminal carelessness. Those terms are synonymous and mean the failure to exercise any care, or the exercise of so little care that you are justified in believing that the person whose conduct is involved was wholly in-

different to the consequences of his conduct and to the welfare of others."

From this instruction, which is the law of the case, it is clear that the only basis of this conviction is reliance upon the last portion of § 6–58 as above set out. As noticed in *State v. Wilson*, supra, 301 P.2d at 1058, there is no other state which we have been able to find where the crime of involuntary manslaughter is defined as it is in our statute. If follows we can find no direct authority from other jurisdictions which help in defining the application of this statute and the conduct to which it is directed. However, there is authority from this court which helps us to determine what course of conduct this latter part of the statute was intended to cover.

 Repeals by implication are not favored, *State v. Cantrell*, supra, 186 P.2d at 543; but this court has not hesitated to apply this in a proper case, *Longacre v. State*, Wyo., 448 P.2d 832, 834; *Blount v. City of Laramie*, Wyo., 510 P.2d 294, 296; *Tucker v. State ex rel. Snow*, 35 Wyo. 430, 251 P. 460, 465. If the statutes cannot stand together and if they are repugnant by virtue of relating to the same subject and are directed at a distinct offense with the same object, the earlier cannot stand, *State v. Cantrell*, supra. In *Haines v. Territory*, 3 Wyo. 167, 13 P. 8, 11, the court recognized the rule that a later specific statute controls over a general statute.

In making disposal of this it is necessary to determine what conduct is made criminal by the challenged portion of § 6–58, and under these words, "culpable neglect" and "criminal carelessness," which are synonymous, *State v. McComb*, supra, 239 P. at 528; *State v. Catellier*, 63 Wyo. 123, 179 P.2d 203, 215.

This court, in *State v. McComb*, supra, 239 P. at 529, in discussing the application of this phrase to a prosecution for a death caused by the operation of a motor vehicle, cited with approval authorities which include as an element of such offense the following:

" * * * the carelessness must have been gross *implying an indifference to*

*consequences*; and the term "gross negligence" means something more than mere negligence. It means wantonness and *disregard of the consequences which may ensue*, and indifference to the rights of others that is equivalent to a criminal intent.' " (Emphasis supplied.) (*People v. Barnes*, 182 Mich. 179, 148 N.W. 400, 406–407.)

Also, in *State v. McComb*, the court cited with approval *Wright v. State*, 90 Tex.Cr.R. 435, 235 S.W. 886, wherein when discussing gross negligence it was said:

" * * * In civil cases the courts of this state define it as such negligence as evinces *a reckless disregard of human life or bodily injury.*" (Emphasis supplied.)

It is to be noted that this opinion antedates by some fourteen years the later vehicular homicide statute, which first employed the words "reckless disregard of the safety of others."

In *State v. Catellier*, supra, 179 P.2d at 227–228, this court held it was error to refuse an instruction defining criminal negligence in a manslaughter case which included the following element:

" ' * * * It means wantonness and disregard of the rights of others that is equivalent to a criminal intent.' * * ' "

In arriving at that result the court cited with approval the following definition:

" ' * * * *a reckless disregard of human life or the safety of others*, or indifference to consequences, equivalent to criminal intent.' * * * " (Emphasis supplied.) (Citing 40 C.J.S. Homicide § 62, p. 926.)

This definition, it will be noted, includes the identical elements of our vehicular homicide statute.

In *State v. Rideout*, Wyo., 450 P.2d 452, 453–454, this court had occasion to explore the definition of the term "careless disregard of the safety of others" without attempting to correlate it with our manslaughter statute or to distinguish it. An examination of that definition does not reveal any operative distinction between that

and the definition of the negligence necessary to support a manslaughter conviction, as we have heretofore discussed. From these authorities it might fairly be said that both of these statutes are directed at substantially the same course of conduct and are thus inconsistent and repugnant, and if necessary we could place our reliance thereon, which we will not do, however, because of the existent conflict and confusion in this area.

■ Although it has been mentioned before that there is no direct authority from other jurisdictions, there is considerable persuasive and applicable law because of the manner in which this court has before considered the involuntary manslaughter statute. In *State v. McComb,* supra, 239 P. at 528, this court not only construed the provisions of our statute as synonymous but further held that the negligence required and described therein was not only more than ordinary negligence but that it must be criminal and culpable in character.[2] Following this, in *State v. Catellier,* supra, 179 P.2d at 238, this court adopted that concept, holding that in a manslaughter case an instruction defining "criminal negligence" should have been given. Because of these holdings we view the case of *Atchley v. State,* Okl.Crim., 473 P.2d 286, 289, as most persuasive and applicable to this case. The Oklahoma statute recognizes the standard of "culpable negligence" as the basis for a manslaughter conviction; and their so-called negligent homicide statute contains the identical standard which appears in ours. In that case the court held, in face of a contention by the State that these statutes contained different elements and that therefore the latter did not repeal or supersede the earlier statute, that because the statutes provided different punishments for identical acts they were repugnant and in-

consistent. We adopt that holding and find most persuasive the authorities therein cited at 473 P.2d 288, being *State v. Biddle,* 6 Terry 244, 45 Del. 244, 71 A.2d 273; *State v. Collins,* 55 Wash.2d 469, 348 P.2d 214; *State v. Morf,* 80 Ariz. 220, 222, 295 P.2d 842; *State v. Davidson,* 78 Idaho 553, 309 P.2d 211; and *State v. London,* 156 Maine 123, 162 A.2d 150; and we find the rule therein cited and as gleaned from those authorities completely applicable to our situation.

Since *Atchley,* the North Dakota Supreme Court has examined this proposition in *State v. Hagge,* No.Dak., 224 N.W.2d 560, and held that although under their law a conviction for involuntary manslaughter may be based upon ordinary negligence, the later negligent homicide statute, with the same standard as ours and which provided for a lesser penalty, was inconsistent and repugnant to the manslaughter statute and superseded it. This was done in reliance upon the rule that "Where a later statute imposes a different punishment, either more or less severe, for the same or substantially the same offense, the later statute is ordinarily held to repeal the earlier one," 224 N.W.2d at 565. Also, see 1A Sutherland Statutory Construction, § 23.26, p. 270 (4th Ed.), and 73 Am.Jur.2d Statutes, § 418, p. 522.

■ Because § 31–232(a) proscribes substantially the same behavior as does the questioned portion of § 6–58, and because the penalty provided in § 31–232(a) is substantially less, we must hold that these two statutes are repugnant and conflicting insofar as the latter portion of the involuntary manslaughter statute is concerned and that therefore § 31–232(a) does repeal by implication the last phrase in § 6–58 insofar as it is applied to deaths occasioned by negligent operation of a motor vehicle.

---

2. When describing the degree of negligence required as a basis for a manslaughter conviction, it is most appropriate to describe the adjectives "culpable" and "criminal" used in conjunction with negligence as "vivid adjectives" and of "little help," Moreland, A Rationale of Criminal Negligence, pp. 28–29 (Univ. of Kentucky Press 1944). This author is bold to

suggest that a writer of an opinion utilizes such terms to label a concept which he has accepted and by use of these conclusory adjectives demonstrates that they are employed as meaning that combination of negligent acts necessary to constitute the basis of a manslaughter conviction occasioned by negligent conduct.

Although the foregoing necessitates a reversal of this case, it is necessary to consider certain asserted errors in connection with the instructions in this case so that they will not arise in a retrial hereof.

Appellant's first contention is that it was error to give Instruction 8.[3] To support his claim of error, appellant asserts that this submitted a new offense to the jury, namely that the accident occurred while driving under the influence. We find no basis for this contention because the instruction as given deals only with the presumption which arises from the chemical analysis of the defendant's blood and does not set out that such activity is criminal. Appellant makes sole reliance upon *Cutshall v. State,* 191 Miss. 764, 4 So.2d 289. There is little comfort to appellant in that case because of the factual distinction. Defendant therein was charged with manslaughter based upon culpable negligence, and the instruction given, upon which the reversal was based, would have required the jury to find him guilty of culpable negligence if he had been under the influence of intoxicating liquor. This case definitely recognizes that intoxication can be a relevant evidential factor in determining culpable negligence. Evidence that a defendant has been drinking is generally admissible on the issue of negligence and can be considered by the jury in determining the negligence of the defendant, *State v. Chekmizoff,* 82 Ariz. 176, 309 P.2d 796, 798; *Hunt v. State,* Fla., 87 So.2d 584, 585; *Clay v. State,* 211 Md. 577, 128 A.2d 634, 638; *Wallen v. State,* Okl.Cr., 338 P.2d 170, 174; *State v. McDaniels,* 30 Wash.2d 76, 190 P.2d 705, 713, overruled in other respects in *State v. Partridge,* 47 Wash.2d 640, 289 P.2d 702, 706. Since there was evidence in the record that the test revealed the presence of 0.14 percent by weight of alcohol in defendant's blood, it would have been both unfair and improper had the jury not received some instruction on the effect thereof and would have forced them to speculate upon the possible effect of this fact, which could well have been prejudicial to the defendant. It might also be observed that the possible effect of the consumption of this alcohol is most probative in determining the question of defendant's state of mind, particularly insofar as the question of his recklessness is concerned. It was not error to give such instruction.

The remaining questions involve assertions of error based upon the failure of the trial judge to give certain tendered instructions. The instruction denominated as "B" was as follows:

"YOU ARE INSTRUCTED that, if from the evidence in this case, you find that the vehicle being operated by Defendant at the time of the accident possessed a defect that deprived Defendant of control of that vehicle, you must acquit the Defendant."

The failure to give an instruction embodying this principle was error, which alone would require reversal.

There was testimony of Marvin D. Robinson, an expert mechanic, presented by defendant, that the car defendant was driving had a defect in the steering system which could have resulted in a loss of steering control so that the wheels would have cramped when steering and he would have been unable to "control the front steering at all." Although there is considerable rebuttal of this and contention that this did not come into effect or operation until after defendant originally lost control of his car, this in no manner diminishes the right to have the jury instructed upon defendant's theory of the case if there is competent evidence to sustain such theory, *Blakely v. State,* Wyo., 474 P.2d 127, 129; *State v. Hickenbottom,* 63 Wyo. 41, 178 P.2d 119, 131. Although we do not approve nor hold that this instruction is a complete or proper statement of the law because, among other

---

3. No good purpose can be served in lengthening this opinion by setting out such instruction. The court merely gave verbatim § 31–129(b)(i), (ii), (iii), and (v), W.S.1957, 1975 Cum.Supp., which was followed by an instruction setting this forth only as a presumption which might be overcome by proof to the contrary.

things, it does not set out that the defect must be a proximate cause of the accident, it was at least sufficient to advise the court of defendant's theory and should have been given, *Blakely v. State,* supra.

■ The court refused to give offered Instruction "A", which was as follows:

"YOU ARE INSTRUCTED that, under the laws of the State of Wyoming, any person who is dead, unconscious, or is otherwise in a condition incapable of refusal is deemed not to have withdrawn his consent to have a blood alcohol sample drawn, and authorities may, therefore, lawfully draw a blood sample for blood alcohol tests from a dead or unconscious person."

The blood test of the deceased could not have been relevant in any manner in determining the guilt or innocence of this defendant. At most it would appear to be a tactic aimed at placing the prosecuting officials on trial. We do not view the brief of defendant in this particular as containing cogent argument or applicable authority, so we will not consider the same, *Alcala v. State,* Wyo., 487 P.2d 448, 456, certiorari denied 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, rehearing denied 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823; *Connor v. State,* Wyo., 537 P.2d 715, 719.

■ It was not error to refuse to give Instruction "C" as follows:

"YOU ARE INSTRUCTED that, if, from the evidence in this case, you find that there was another or intervening cause of the accident and ensuing deaths in this case not attributable to the Defendant, you must acquit the Defendant."

There is no evidence in the record upon which it could be properly based. Appellant's brief demonstrates its impropriety by stating its reliance upon conduct "prior to the accident" and recites various things it alleges deceased did prior to the accident. Without citation of authority, it should be evident that by the use of the word "intervening" this could apply only to something which has intruded into or come between

the original negligent act and the result. We have recognized that an intervening cause arises between the original act of negligence and the accident, *Gilliland v. Rhoads,* Wyo., 539 P.2d 1221, 1231; *Fagan v. Summers,* Wyo., 498 P.2d 1227, 1229. The facts upon which appellant relies in his argument in support of this contention are an obvious attempt to inject the question of contributory negligence of the deceased Eldridge. Contributory negligence of the deceased is no defense in a case of this character, *Coate v. State,* 165 Tex.Cr.R. 280, 306 S.W.2d 727, 729; *State v. Romero,* 69 N.M. 187, 365 P.2d 58, 60–61; *State v. San Antonio,* 97 R.I. 48, 195 A.2d 538, 540, and Annotation 99 A.L.R. 833, and authorities cited therein.

■ Tendered Instruction "D" was as follows:

"YOU ARE INSTRUCTED that, if, from the evidence in this case, you find that the Defendant acted in a reasonably prudent manner by performing every act that he could or should under the circumstances to avoid injury, you must acquit him of all charges."

It was not error to refuse this instruction. This would have been redundant and repetitious in light of other instructions given in the case touching the burden of proof; the requirement that the deaths be the result of the culpable or criminal carelessness of defendant; and the definition of culpable negligence or criminal carelessness.

The case is hereby remanded for a new trial under § 31–232(a), in conformity with what has been herein expressed.