[Crim. No. 2043. In Bank.—May 11, 1917.]

## THE PEOPLE, Respondent, v. LON HADLEY, Appellant.

CRIMINAL LAW—APPEAL—FAILURE TO POINT OUT ERROR.—The appellate court may decline to review alleged error in the admission or rejection of evidence in a criminal case, where the appellant's brief fails to point out either the error or the injury of the rulings.

ID.—EVIDENCE OF IDENTIFICATION—EXPERIMENT—SIMILARITY OF CONDITIONS.—Where the prosecution had offered testimony identifying the defendant as the perpetrator of the crime, and the defense endeavors to show, as the result of experiment, the impossibility of the identification, it is not essential to the admission of evidence to that end that the physical conditions obtaining at the time of the experiment should coincide to the minutest degree with those existing at the time of the offense.

ID.—MURDER—ACCIDENTAL KILLING DURING PERPETRATION OF BURGLARY—INSTRUCTION.—In a prosecution for murder, in which the evidence showed that the killing took place during an attempt of the defendant to commit burglary, it was proper to instruct the jury that if the death of a person results from the act of another while such other was engaged in perpetrating or attempting to perpetrate burglary, the fact that the killing was accidental is immaterial.

ID.—CONFESSION—QUESTIONING BY POLICE OFFICERS.—The fact that a confession was elicited by the questions of police officers does not authorize an instruction that the method resorted to "presents an important item for consideration in determining whether or not the confession was of a free and voluntary character." Such an instruction would be upon matters of fact.

ID.—INTENT—MEANS USED IN KILLING.—It was proper to instruct the jury that "in determining the intention of the defendant at the time of the transaction complained of, it is important to consider the means used to accomplish the killing. The intent or intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused."

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Wellington W. Judd, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, and Robert B. Camarillo, for Respondent.

HENSHAW, J.—Defendant, a colored man, was charged with the murder of John McGovern. He was found guilty and the death penalty was imposed. He has taken his appeal from the judgment and from an order denying his motion for a new trial.

Certain rulings of the court in admitting and rejecting evidence are complained of. We are aided by no discussion of counsel pointing out either the error or the injury of these rulings. The brief limits itself to the bare statement that "the court erred" in sustaining this objection or in overruling that objection. This court has in numerous instances declined to consider objections so presented. (*People* v. *Woon Tuck Wo,* 120 Cal. 294, [52 Pac. 833]; *People* v. *McLean,* 135 Cal. 306, [67 Pac. 770]; *People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101].) Nevertheless, owing to the gravity of the case, we have examined the record with care, and in none of the instances complained of do we find a ruling which would justify, much less demand, a reversal of the case. Some of these rulings were eminently sound. Others were rulings on evi-

dentiary matters of trifling consequence. One only calls for
specific consideration. The facts of the crime are that the
defendant, about twenty-minutes past 8 o'clock of the even-
ing of April 3d, was in the act of burglarizing the home of
the deceased, who at the time was absent. The deceased re-
turned to his residence while the defendant was endeavoring
to effect an entrance. He went to an outbuilding and picked
up an ax and walked toward his house. This act of the de-
ceased is explained by witnesses, who said that such was his
practice, as McGovern thought that by taking the ax into
his house at night burglars would have a less ready means
of forcing an entrance. However, as he approached his door
the defendant shot him twice and fled. His dead body was
found in his yard the next day. Mrs. Young, a neighbor,
who heard the shots, went to her window and saw a colored
man, whom she identified as this defendant, "sneaking along
the front of McGovern's house." This man climbed the fence
and made his escape by a devious route. These were the
circumstances of the homicide as testified to by Mrs. Young,
though she did not know until the next day, after the body
had been discovered, that McGovern had in fact been killed.
The defense offered the testimony of one Compnext, for the
purpose of showing that under the conditions existing upon
the night and at the time of the homicide Mrs. Young could
not have identified the defendant. It is extremely difficult
to follow this examination from the record, as frequent refer-
ences are made to a map showing the position of shrubbery,
trees, and fences. It is therefore impossible in many instances
to pass upon the pertinency of the evidence and the sound-
ness of the rulings. Thus, as exemplars, the witness is asked,
"Do these trees extend in such a way as to completely shadow
and did they at the time that this crime was alleged to have
been committed—did they extend so as to completely shadow
this down here?" The objection was sustained upon the
ground that the question called for a conclusion of the wit-
ness. Of course if the witness in fact knew, it was no more
an objectionable conclusion than if he had been asked whether
it were light or dark. Again he is asked, "Is there any point
at which to your knowledge the electric light shines in there?"
This would seem to call for a mere declaration of fact. But
an objection was sustained to it as calling for a conclusion
of the witness, and "no foundation laid." "Is Bay Street

a dark street?" is another question that was objected to as calling for a conclusion, and the objection upon that ground was sustained. Throughout the whole examination of this witness great stress seemed to be laid upon the fact that "no foundation was laid," though it does not appear that defendant's counsel was enlightened, nor yet is this court enlightened, as to precisely what was meant by this. Thus the court said: "Counsel, you will have to lay a foundation before you can ask any of these questions." However, later in the examination the matter is illuminated by this statement of the prosecuting attorney:

"Mr. Helms: At this time, perhaps it would be well to state that counsel is apparently attempting to lay a foundation—I do not know, but I assume that he is attempting to lay a foundation—I do not know, but I assume that he is attempting to lay a foundation to show that either this witness or some other witnesses some time this month performed or attempted to perform some sort of an experiment down in the vicinity, or in the premises indicated, and that the purpose of that experiment would be to show that either this witness or some other witness with a similar group of facts— possibly as accurately reproduced as they could at that time reproduce them, undertook to determine whether or not some person, this witness or somebody else, located in the premises of Mrs. Young or approximately a similar position to that which Mrs. Young, according to her testimony must have occupied on the night of the shooting—

"The Court: Captain Helms, I do not see how you can expect to stop counsel from putting on his evidence. . . .

"Mr. Helms: The point of the objection on that question, your Honor, is that at this season of the year, as is well known, a tree may be in full leaf—it may be in full leaf six weeks or two months ago, but where a period of two months has elapsed, the leafing of a tree in the spring of the year, and especially of a deciduous tree such as those trees evidently are, and not being citrus fruit trees, without any question there is a continual variation, from week to week, in the condition of the leafage. A sprout that will be that long will sometimes in three or four days become a foot long— a tender green sprout—the new growth, especially in the spring season. Objects that could perhaps be seen through the tree two months earlier in the spring could not at all

be discerned through the leafage of the same tree, although at both times the tree might be in full leafage. For that reason—I was about to make the remark before, I think counsel will see that it is impossible to reproduce the conditions, the same where we are dealing with growing matter. If the matter were a stone wall or wooden walls even that could be shown to be in the same condition, there might be a possibility of reproducing conditions, but suppose he reproduces physical conditions, then he has to reproduce a person with exactly the same capacity of vision that Mrs. Young had, before he has the conditions the same as her observation."

The court did not rule upon this statement, but it is quite apparent that the prosecuting attorney believed that unless the "experiment" touching the ability of one person to recognize another was carried out under identical conditions, even to the last leaf on the tree, with those which obtained when the witness Mrs. Young testified that she identified the defendant, the evidence was inadmissible. Of course such is not the law. Nor did the court rule that such was the law. And while it might well have shown a greater liberality in permitting counsel for the defense, manifestly inexperienced, to introduce his evidence, it cannot be said that the stringency of the court's rulings worked any hardship to appellant.

Counsel next complains of all the instructions which the court gave and of all which it refused to give. But, specifically, complaint is made that the court instructed the jury that if the death of a person results from the act of another while such other "was engaged in perpetrating or attempting to perpetrate robbery, burglary, or mayhem, in which case the fact that the killing was accidental is immaterial." The objection to this instruction is that it "called to the attention of the jury the fact that the defendant was charged with murder during an attempt to commit burglary." Such in fact was the case and such in fact was the evidence, and that the instruction is sound in point of law is beyond doubt. (People v. Milton, 145 Cal. 169, 171, [78 Pac. 549]; People v. Jones, 160 Cal. 358, 370, [117 Pac. 176]; People v. Witt, 170 Cal. 104, [148 Pac. 928].)

The defendant confessed the crime. The court refused to give the following instruction: "You are instructed that the fact that the questioning was done by police officers presents an important item for consideration in determining

whether or not the confession was of a free and voluntary character." In *People* v. *Quan Gim Gow,* 23 Cal. App. 507, [138 Pac. 918], the court of appeal in its general discussion quotes from *Bram* v. *United States,* 168 U. S. 557, [42 L. Ed. 568, 18 Sup. Ct. Rep. 192], to the following effect: "Whatever be the rule in this regard in England, however, it is certain that where a confession is elicited by the questions of a policeman, the fact of its having been so obtained, it is conceded, may be an important element in determining whether the answers of the prisoner were voluntary." An effort was here made to have this embodied into the form of positive law for the instruction of the jury. There is no warrant in the court's so doing. (*People* v. *Siemsen,* 153 Cal. 387, [95 Pac. 863]; *People* v. *Luis,* 158 Cal. 185, 189, [110 Pac. 580].) To have done so would have been a dangerous invasion of the rights secured to litigants against instructions by a court to a jury upon matters of fact. (*People* v. *Hawes,* 98 Cal. 648, [33 Pac. 791]; *People* v. *Keith,* 141 Cal. 686, [75 Pac. 304]; *Estate of Blake,* 136 Cal. 306, 311, [89 Am. St. Rep. 135, 68 Pac. 827].) The following instruction which the court gave is complained of: "In determining the intention of the defendant at the time of the transaction complained of, it is important to consider the means used to accomplish the killing. The intent or intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused." This precise instruction, however, has been declared to be a sound exposition of the law in *People* v. *Besold,* 154 Cal. 363, 369, [97 Pac. 871], and *People* v. *Wilkins,* 158 Cal. 530, [111 Pac. 612].

The judgment and order appealed from are therefore affirmed.

Shaw, J., Sloss, J., Melvin, J., and Angellotti, C. J., concurred.