[Crim. No. 1324. Second Appellate District, Division One.—July 7,
1926.]

## THE PEOPLE, Respondent, v. COY HALBERT, Appellant.

[1] CRIMINAL LAW — AUTOMOBILE COLLISION — MANSLAUGHTER — EVI-
DENCE—CORPUS DELICTI—ADMISSIONS.—In a prosecution for the
*killing* of a person caused by the collision of an automobile,
alleged to have been driven by defendant, with an automobile
driven by deceased, at a street intersection, the *corpus delicti* to
support the charge of involuntary manslaughter having been es-
tablished by evidence apart from any admission or confession
of defendant, the fact that defendant was the driver of the
offending machine may be established by admission made by
him of that fact.

1. See 8 **Cal. Jur.** 167.

[2] ID.—VERDICT OF GUILTY OF MANSLAUGHTER — EVIDENCE. — In such prosecution the evidence as a whole was sufficient to sustain the verdict of guilty of manslaughter.

[3] ID.—VIOLATION OF SECTION 141, CALIFORNIA VEHICLE ACT—PLEADING—EVIDENCE—VARIANCE.—In such prosecution, where the defendant, in addition to the manslaughter charge, was charged with a violation of section 141 of the California Vehicle Act for having proceeded on his way after the collision without rendering any assistance to deceased, the fact that the information, in alleging a violation of said statute, charged that the automobile driven by defendant "did then and there collide with and strike a human being, to-wit, Frank Jones" (the deceased), whereas the evidence was limited to the fact that defendant's automobile struck, not deceased, but only the automobile in which deceased was riding, did not constitute a variance between the information and proof, as the terms of the charge (which conform to the terms of said statute) are sufficient to include a personal injury caused by collision between the two automobiles.

[4] ID. — IDENTITY OF DRIVER OF AUTOMOBILE—CORPUS DELICTI — EVIDENCE.—In such prosecution the *corpus delicti*, consisting of a crime committed by the driver of defendant's automobile, having been established by competent evidence exclusive of any confession or admission made by defendant, the trial court did not err in receiving evidence of his admission that he was in fact the driver of his automobile at the time of the collision.

[5] ID. — EXPERIMENTS — EVIDENCE. — In order that experimental evidence in corroboration or disproof shall be of any value, it must be shown that the conditions affecting the result are, as near as may be, identical with those existing at the time of and operating to produce the particular effect, and an absolute identity being impossible, a substantial identity must exist to give the evidence value.

[6] ID.—CONDITIONS INVOLVED IN EXPERIMENTS—PROVINCE OF JURY.— Where the principal conditions in an experiment are the same as those of the evidence against which the experiment is directed, the jury may weigh and make allowance for minor differences, which affect the weight and not the competency of the evidence.

[7] ID. — COLLISION OF AUTOMOBILES — EXPERIMENTS — EXCLUSION OF EVIDENCE.—In this prosecution for manslaughter and for a violation of section 141 of the California Vehicle Act growing out of the collision of an automobile, alleged to have been driven by

5. Admissibility of experimental evidence, notes, 7 **Ann. Cas.** 216; Ann. Cas. 1912D, 1264. See, also, 8 **Cal. Jur.** 79; 10 **R. C. L.** 1002.

6. See 8 **Cal. Jur.** 80.

defendant, with an automobile driven by deceased, where witnesses for the prosecution had testified that the collision occurred at a certain point in a street intersection, the trial court should have permitted questions asked by defendant's counsel of a witness for defendant (which witness had made tests about six months after the collision to ascertain whether the point of collision could be seen from the various positions in which the prosecution witnesses testified they stood), with a view to showing certain physical conditions on the ground and consequent physical impossibilities, in disparagement and contradiction of testimony introduced by the prosecution; but the error of the trial court in ruling out the proposed questions applied only to the manslaughter charge, and not to the charge of violating the California Vehicle Act.

[8] Id.—Statements of Defendant—Admissions—Confessions.—In such prosecution statements which a witness testified were made by defendant shortly after the collision, to the effect that one of two caps found in defendant's car was defendant's, and that his brother was with him, but he did not know where his brother was or went to, after defendant had denied that there was anyone with him, did not constitute a confession, but were mere admissions of facts which in themselves were insufficient to authorize a conviction; and this being so, the rule governing proof of confessions and which requires that their voluntary character be first established had no application to the real matter at issue, and all of the testimony offered by defendant in connection with his examination of a witness whom defendant proposed to show had given testimony showing that said statements were involuntarily made was immaterial and an objection thereto properly sustained.

[9] Id. — Instructions — Words and Phrases — Verb "Occasion" Equivalent to "Cause."—In such prosecution, where an instruction, after defining the duty of an automobile driver to exercise reasonable care and to prevent injury to others, states that if a person knowing the danger, etc., recklessly, etc., operates his automobile without due respect for the rights and safety of others, and does not use such means as are reasonably within his command to prevent a collision, the law holds him criminally responsible for such negligence or wilful omission of duty, and "should he thereby occasion the death of another, he is, under the law, guilty of manslaughter," the verb "occasion" as used was exactly equivalent to the word "cause."

[10] Id. — Proximate Cause — Instructions — Evidence. — In such prosecution defendant cannot justly complain that such instruction failed to define "proximate cause," nor of the refusal to give his requested instruction to the effect that the prosecution must prove and the jury find, in order to convict defendant, that the

failure to use due caution and circumspection was the proximate cause of the death, that is, that cause which in natural and continuous sequence unbroken by any sufficient intervening cause or without which the injury would not have occurred, where the evidence did not justify defendant in demanding that this rule of "proximate cause" be included in the instructions to the jury, his request for the instruction being based upon the pretense that deceased was killed by his own automobile.

[11] ID.—INSTRUCTIONS—NEGLIGENCE—DEFINITION.—In such prosecution the objection of defendant directed to the fact that in explaining the phrase "gross negligence," the court used such words as "wilful," "wanton," and "wantonness," without defining such words, is untenable, where such words were used in their ordinary sense as commonly understood in the English language.

[12] ID.—CONTRIBUTORY NEGLIGENCE—DEFINITION OF—INSTRUCTIONS.— In such prosecution the trial court sufficiently defined contributory negligence in connection with an instruction which informed the jury that contributory negligence is not a defense to a charge of manslaughter, by using the phrase "that is, negligence on the part of the person injured which contributed to the injury."

[13] ID. — PRESUMPTION OF INNOCENCE — DOCTRINE OF REASONABLE DOUBT — INSTRUCTIONS. — In such prosecution defendant cannot predicate error upon the action of the trial court in striking out parts of a requested instruction relating to the presumption of innocence and the doctrine of reasonable doubt, where the court, in other instructions, clearly announced to the jury the rule as usually given, covering the presumption of innocence and the requirement that before conviction the guilt of a defendant must be established to a moral certainty, and that if there is reasonable doubt remaining defendant should be acquitted.

[14] ID.—EXCLUSION OF WITNESSES FROM COURTROOM—DISCRETION.— As a general rule, the matter of exclusion of witnesses, and of exceptions made in such orders of exclusion, is discretionary, and in the exercise of such discretion error will not be implied; and in such prosecution, the trial court did not abuse its discretion in excepting from its order of exclusion the witnesses who were police officers, where the only objection offered as to their presence was that they would be important witnesses, without definitely informing the trial judge concerning their relation to the case or the relative importance of the testimony to be given by them.

[15] ID.—EXCLUSION OF EXPERIMENTAL EVIDENCE — ERROR — ABSENCE OF MISCARRIAGE OF JUSTICE.—In such prosecution, while the trial court erred in sustaining objections to questions asked of de-

---

13.  See 8 Cal. Jur. 314.
14.  See 27 Cal. Jur. 64; 26 R. C. L. 1058.

fendant's witness concerning tests made by him at the street intersection where the collision occurred, the exclusion of such evidence did not result in a miscarriage of justice.

(1) 16 C. J., p. 638, n. 60, p. 774, n. 49; 42 C. J., p. 1362, n. 65. (2) 30 C. J., p. 317, n. 71; 42 C. J., p. 1362, n. 65. (3) 42 C. J., p. 1386, n. 65. (4) 42 C. J., p. 1360, n. 29. (5) 16 C. J., p. 563, n. 37. (6) 16 C. J., p. 563, n. 37. (7) 16 C. J., p. 563, n. 35. (8) 16 C. J., p. 628, n. 3, p. 629, n. 21. (9) 42 C. J., p. 1364, n. 95. (10) 42 C. J., p. 1364, n. 95. (11) 42 C. J., p. 1364, n. 98. (12) 42 C. J., p. 1357, n. 78, p. 1364, n. 98. (13) 16 C. J., p. 984, n. 41, p. 988, n. 80, p. 1063, n. 85. (14) 16 C. J., p. 841, n. 1, p. 843, n. 24; 17 C. J., p. 246, n. 76. (15) 17 C. J., p. 333, n. 95.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Perky, McConnell & Hill and B. F. Griffith for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The defendant was found guilty under counts 1 and 3 of the information. Count 2 charged the offense of violation of section 112 of the California Vehicle Act. But at the trial count two was dismissed.

American Avenue is a street running north and south in the city of Long Beach. State Street is an east and west highway which crosses American Avenue and is thirty-six feet wide between curbs. Extending along the center of American Avenue is a right of way, seventy-two feet in width, of the Pacific Electric Railway. Between the west line of the right of way and the west curb line of the avenue, the width of the driveway is thirty-one feet. On the east side of the right of way the width of the driveway is twenty-six feet. State Street is open for traffic across American Avenue.

At about 1 o'clock on the night of March 29, 1925, one Frank Jones was driving a Ford roadster, going south on the west side of American Avenue. At about the same time

a Ford coupe, which was the property of defendant, was being driven toward the west on State Street across American Avenue. One of the disputed questions in this case is the question whether or not the defendant was driving his car or was there at all. He claims that he was not there. But it is admitted that there was a collision between these two Ford automobiles. The roadster was turned over in such manner that its driver, Jones, was crushed and injured so that on the same night he died. According to the testimony of witnesses to the accident, the left front wheel of the coupe struck the left rear wheel of the roadster and whirled it around and turned it over. There is testimony to the effect that when the roadster was hit it was south of the center line of State Street. It follows as a necessary inference from this fact that at the moment of collision the defendant's automobile was on the wrong side of the road along which it was traveling. After the collision the Ford coupe "stopped just an instant and then went right west," and disappeared; no one got out of this machine; no one went from it to the injured person.

The manslaughter charge is contained in count one of the information. As shown by the evidence, the crime committed was involuntary manslaughter. This crime is the unlawful killing of a human being, without malice, when done "in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (Pen. Code, sec. 192.)

[1] The foregoing statement of facts shows that the evidence was sufficient to prove that the driver of the Ford coupe was guilty of involuntary manslaughter. The only additional fact necessary to sustain the conviction would be the fact that the defendant was the driver of the Ford coupe. The *corpus delicti* having been established by evidence apart from any admission or confession made by defendant, there remains no doubt that the fact that the defendant was the driver of the offending machine may be established by admission made by him of that fact. (*People* v. *Moran*, 144 Cal. 48, 53 [77 Pac. 777].) The record contains testimony showing admissions made by the defendant to the effect that he was the driver of his car at the time of the collision. We will consider later appellant's further con-

tention that the evidence of statements made by him was improperly received. Assuming for the present that such evidence was properly received, it is sufficient to establish the fact that he was present in and was actually driving his car at the time of the collision. [2] The conclusion follows that the evidence as a whole is sufficient to sustain the verdict of guilty of manslaughter under the first count of the information.

[3] Count III of the information, under which also the defendant was convicted, is the crime of violation of section 141 of the California Vehicle Act. (Stats. 1923, p. 517; Deering's Gen. Laws, 1923 ed., Act. 5128.) That section reads as follows: *"Duty to stop in case of accident. Penalty.* The driver of any vehicle which strikes any person or collides with any other vehicle shall immediately stop and give his name and address and the names and addresses of all passengers not exceeding five in his vehicle, also the registration number of his vehicle, to the person struck or the occupants of the vehicle collided with, and shall also render to such persons all necessary assistance, including the carrying of such persons to a physician or surgeon for medical or surgical treatment, if such treatment is required or if such carrying is requested by the person struck or any occupant of such vehicle collided with. Any person violating any of the provisions of this section is punishable by imprisonment in the state prison not exceeding five years or in the county jail not exceeding one year, or by a fine not exceeding five thousand dollars, or by both such fine and imprisonment." The evidence in the present record shows that defendant's vehicle collided with the vehicle then being driven by Jones; that the defendant's car stopped momentarily only and then proceeded on its way; and that no occupant of defendant's car rendered necessary assistance or any assistance to the injured person, although that person was manifestly in a condition requiring immediate aid.

Appellant claims that there was a variance between count III of the information and the proof, in that the information charged that the automobile driven by the defendant "did then and there collide with and strike a human being, to-wit, Frank Jones," etc., whereas the evidence is limited to

the fact that appellant's automobile struck, not Frank Jones, but only the automobile in which Jones was riding; that, in fact, "the direct cause of the death of deceased was his own auto." This claim of appellant strikingly suggests Hood's narrative of the case of Miss Kilmansegg, who, according to the coroner's jury, was guilty of suicide, "because her own leg had killed her." We are of the opinion that the terms of the charge (which conform to the terms of the statute which we have quoted) are sufficient to include a personal injury caused by the collision between the two automobiles. It would be an unreasonably narrow construction of the statute to hold that the crime there defined cannot be committed unless the automobile of the offending party actually touches the person of the injured human being. Unquestionably, a personal assault may be made by a blow delivered against the clothing which covers a man's body. Under the circumstances of an automobile collision a blow given by A's automobile to B's automobile, whereby B's automobile turns over upon and injures B, is in effect a blow delivered against B's body. This being so, the variance in the proof, for which appellant argues, is not established.

[4] It follows also that the *corpus delicti*, consisting of a crime committed by the driver of appellant's automobile, was established by competent evidence exclusive of any confession or admission made by the defendant. We thus arrive at the conclusion, applicable to the third count as well as to the first count of the information, that there is no merit in appellant's contention (based upon the claimed absence of competent proof of the *corpus delicti*), that the court erred in receiving evidence of his admission that he was in fact the driver of his automobile at the time of the collision.

Appellant contends that the court erred in sustaining objections to questions propounded by him to a witness by whom appellant was seeking to show certain physical conditions on the ground and consequent physical impossibilities (as appellant's counsel claimed), in disparagement and contradiction of testimony introduced by the state. Alfred D. Mitchell was the witness. He stated that he was familiar with the location of the driveways at the intersection of

American Avenue and State Street, and that he was present at that place at 9 o'clock on Monday evening, September 21, 1925. This date was about six months later than the date of the transaction which was under investigation in this case. The court refused to allow this witness to state what were the conditions of the light, or where the witness stood with reference to the street intersection, at the time of his visit there on the evening of September 21st. The court then sustained objection to three successive questions which were similar in character, except that the point of view was shifted in the several questions; but they were all directed to the purpose of showing how much or how little could be seen at the stated time from the several points of view. The third question will aptly illustrate the subject matter of this particular inquiry. Question: "I will ask you if, standing at a point on the east driveway of American avenue 50 feet from the intersection of the east driveway of American avenue and State street, and looking northwest toward the intersection of the western driveway of American avenue and State street, if you were able to tell whether a car driven west on State street and crossing said intersection, passed to the left or right of the center line of said intersection?"

Appellant's attorney was proceeding to ask further questions apparently of similar import when the court said, "I will be consistent in my rulings, so there is no use of pursuing it any further. You have got your record." We presume that the purpose of these questions was that indicated by counsel for appellant as hereinbefore stated. Eye-witnesses of the collision which occurred on the night of March 29, 1925, had testified that at the moment of the collision they were present at certain points, which were substantially identical with the positions assumed for Mr. Mitchell in the questions propounded to him. This may be illustrated by the testimony of Mrs. Elkins. She testified that immediately preceding the collision between the two automobiles she and her husband were driving northward on the east driveway of American Avenue just south of State Street; that she saw a Ford roadster hit in the rear by a Ford coupe. Definitely and in detail she described the collision and the results of the collision as plainly seen by her. She located the position

of the Ford roadster when it was hit and indicated that position as being south of the center line of State Street.

Appellant contends that it was the duty of the court to allow him to introduce the aforesaid offered evidence of Mitchell in order to assist the jury in determining whether or not it was a physical possibility for any person, under any atmospheric conditions, from the said several points of view, to fix with any degree of certainty the center line of State Street across its intersection with American Avenue, so as to be able to testify to the position of appellant's automobile with respect to the center line of State Street while his automobile was traveling west at said street intersection.

In *People* v. *Hadley,* 175 Cal. 118 [165 Pac. 442], the defendant was convicted of murder committed at night while burglarizing the house of the deceased. Mrs. Young, a neighbor who heard the shots, went to her window and saw a colored man, whom she identified as the defendant, "sneaking along in front of the house of the deceased," and then climbing over a fence. The defendant offered the testimony of a witness for the purpose of showing that under the conditions existing at the time of the homicide, Mrs. Young could not have identified the defendant. The court sustained a number of objections to the questions asked of this witness, which questions apparently were for the purpose of showing the conditions existing when the witness made his observation, so that the same might be considered in comparison with the conditions existing at the time to which Mrs. Young referred in her testimony. The district attorney was insisting that before the impeaching evidence could be received, precisely similar conditions (including equality of eyesight), must be established for the purposes of the experiment. Referring to this, the supreme court said: "The court did not rule upon this statement, but it is quite apparent that the prosecuting attorney believed that unless the 'experiment' touching the ability of one person to recognize another was carried out under identical conditions, even to the last leaf on the tree, with those which obtained when the witness Mrs. Young testified that she identified the defendant, the evidence was inadmissible. Of course such is not the law. Nor did the court rule that such was the law." [5] In order that experimental evidence

in corroboration or disproof shall be of any value, it must be shown that the conditions affecting the result are, as near as may be, "identical with those existing at the time of and operating to produce the particular effect. An absolute identity is, of course, impossible, but a substantial identity must exist to give the evidence value." (*County of Sonoma* v. *Stofen,* 125 Cal. 32, 39 [57 Pac. 681, 683].) [6] Where the principal conditions in the experiment are the same as those of the evidence against which the experiment is directed, the jury may weigh and make allowance for minor differences. These affect the weight, not the competency, of the evidence. (*People* v. *Phelan,* 123 Cal. 551, 568 [56 Pac. 424].) The foregoing decisions all assume that evidence obtained by means of experiment is, under appropriate circumstances, receivable as a means of testing the reliability of testimony concerning facts observed by a witness. [7] This case, as developed by the evidence for the prosecution, was left in a situation where the evidence offered by defendant should have been received. Therefore, the court erred in ruling out the proposed questions. This error, however, applies only to the charge of manslaughter, and not to the third count of the information.

[8] Under point V of his brief appellant claims that the court erred in sustaining objections to questions propounded by him to the witness Holland for the purpose of showing that Holland had made at other times statements inconsistent with his present testimony. Appellant claims that he had a right to introduce this evidence because he was surprised and prejudiced by the unexpected answers of the witness, which were different from testimony given by him at the preliminary examination of the charge against appellant. The testimony of Holland at this time was offered in relation to a subordinate issue, which was, the right of the prosecution to introduce in evidence the testimony of the witness Iseminger concerning statements made by appellant at the place where he was arrested at or near the place where his Ford coupe was found shortly after the accident. Iseminger testified that when he and Officer Holland arrived at the scene of the accident at American Avenue and State Street a few minutes after that accident had occurred, he and Holland had been given the number of the Ford coupe which had disap-

peared from the scene. Following a clue, they found this
Ford coupe, bearing that number, and also found the de-
fendant near the coupe and walking away from the direction
of the place where it was standing. Iseminger said that at
that time and place the defendant made certain statements
which the witness in general terms . asserted were made
freely and voluntarily and without any threat or violence
or promise of immunity or reward having been made to
obtain such statement. It was for the purpose of contra-
dicting this testimony and thus sustaining appellant's ob-
jection to the introduction of the purported statement that
he was permitted to examine the witness Holland concern-
ing the circumstances under which the statement to which
the witness Iseminger was about to testify had been made.

After the conclusion of the evidence received concerning
the foundation for introduction of said statement, Iseminger
was permitted to testify to the statement which he said was
made by appellant. In substance his answer was that when
he and Holland found appellant near the said Ford coupe,
appellant said that one of the caps found in the car was
his own. "I asked him where the other fellow was and he
said there was no one with him and I said, 'Yes, there was
some other people in the car with you, wasn't there?'
And he said, 'No, there was no one with me.' I said,
'Who does this other cap belong to?' He said his brother
was with him then, and I asked him where his brother
went to, where his brother was, and he said he didn't know,
. and I believe that was about all the conversation at that
time."

Turning now to the matter of the court's ruling, which
is the subject of appellant's complaint at this time, we find
that counsel for appellant asked Holland, "Q. And isn't
it a fact that he wouldn't say anything, so you handcuffed
him to the front wheel of the car?" The witness having
answered in the negative, appellant then sought to intro-
duce testimony given by Holland at the preliminary ex-
amination, which reads as follows: "A. Well, I went—my
partner was there, Mr. Iseminger, he came there when I was
bringing him back down Twentieth street, and I turned him
over to him and right there we both questioned him. He
would not say anything, so we handcuffed him to the front

wheel of the car, and I went over and tried to call in to the station, but the telephone give me no connections; at that time other officers had been sent out there, and we turned him over to them."

From the foregoing it appears that, even according to the testimony so given by Holland at the preliminary examination, no part of the alleged statement was obtained from the defendant at or after the time when he was handcuffed. Thus far we have assumed that the statements made by appellant to these officers while they were on the street where the coupe was found were statements in the nature of a confession. The fact is, however, that those statements did not constitute a confession, but merely were admissions of facts which were in themselves insufficient to authorize a conviction, upon either one of the two counts on which the defendant was convicted. This being so, the rule governing proof of confessions and which requires that their voluntary character be first established had no application to the real matter then at issue before the court, and all of the testimony offered by appellant in connection with his examination at that time of the witness Holland was immaterial, at least so far as counts one and three are concerned. (*People* v. *Fowler*, 178 Cal. 657, 664 [174 Pac. 892].)

[9] Concerning the court's instruction to the jury, appellant assigns error in thirteen of the instructions given, and error in refusal of eight instructions requested by him and refused by the court. A few points only appear to require comment thereon in this place. Instruction II, after defining the duty of an automobile driver to exercise reasonable care and to prevent injury to others, states that if a person knowing the danger, etc., recklessly, etc., operates his automobile without due respect for the rights and safety of others, and does not use such means as are reasonably within his command to prevent a collision, the law holds him criminally responsible for such negligence or wilful omission of duty, and "should he thereby occasion the death of another, he is, under the law, guilty of manslaughter." The principal criticism directed against this instruction is that it fails to define proximate cause or to limit the remoteness of the "occasion." As to the latter point, it is manifest that the

verb "occasion" as used was exactly equivalent to the word "cause."

[10]   The suggested point concerning "proximate cause" is further emphasized by appellant in connection with his requested instruction No. 15, which was refused by the court.   This requested instruction reads as follows: "It is not sufficient to warrant a conviction under count I of the information that the prosecution prove and you find from the evidence that the defendant failed to use due caution and circumspection under the circumstances, but the prosecution must further prove and you must further find from the evidence that the failure to use due caution and circumspection was the approximate cause, that is, that cause which in natural and continuous sequence unbroken by any sufficient intervening cause or without which the injury would not have occurred."   The principle involved has been frequently affirmed.   A recent instance is *People* v. *Wilson,* 193 Cal. 512, 517 [226 Pac. 5], where the supreme court, in defining the conditions under which the defendant might be found guilty of involuntary manslaughter, arising out of his careless or unlawful manner of driving an automobile, included in its statement the apparently undoubted assumption that the death of the injured person must have been "proximately due to" defendant's violation of the requirements of law which applied to him under the facts stated.   But we are further of the opinion that the evidence herein did not justify defendant in demanding that this rule of "proximate cause" be included in the instructions to the jury.   The request for this instruction was based upon the pretense, to which we have adverted, to the effect that Mr. Jones was killed by his own automobile. But the actual facts concerning the immediate results of the accident were not in doubt or dispute.   From the circumstances as proved, it is plain that Jones received his injuries through the instantaneous, concurrent, and united action of the two automobiles.   Practically there were only two really disputed facts in the case.   These related to the evidence that the defendant was the driver of his car at the time of the accident and the evidence that the collision occurred at a point south of the center of State Street.

[11]   One of appellant's objections to instruction 12 arises from the fact that in explaining the phrase "gross negligence," the court used such words as "wilful," "wanton," and "wantonness,"—as in the phrase "with a wanton and reckless disregard for the safety of others,"—without defining the words "wilful," "wanton," and "wantonness." These words were used in their ordinary sense as commonly understood in the English language. A jury which did not understand them would not understand an explanation of them.

[12]   Concerning instruction 13, which informed the jury that contributory negligence is not a defense to a charge of manslaughter, complaint is made that the instruction does not define contributory negligence. But the court did define it sufficiently for the instant purpose, by using the phrase "that is, negligence on the part of the person injured which contributed to the injury."

[13]   Defendant's requested instruction No. 2 as presented by him reads as follows: "The information filed against the defendant is merely a formal accusation, and must not be considered by you as evidence or allowed to prejudice you or influence your minds against the defendant. In a criminal case the prosecution must prove every material element of the offense charged beyond a reasonable doubt. Probabilities or that the greater weight or preponderance of the evidence supports the allegations of the information, will not warrant a conviction. The law presumes the defendant to be innocent of the offense charged until he is proven guilty by competent evidence beyond a reasonable doubt. This presumption of innocence has the weight and effect of evidence in the defendant's behalf and continues with him throughout the trial until from all the evidence you are satisfied of his guilt beyond a reasonable doubt."

The court modified this instruction by striking out all of it except the first sentence. It was indicated in the judge's notation on the instruction that the stricken portions were omitted because they were covered in other instructions given to the jury. Counsel for appellant assert that the parts stricken are not sufficiently covered in the instructions given to obtain for appellant a fair and impartial trial.

They have not pointed out the particulars in which the instructions given, in relation to the presumption of innocence and the doctrine of reasonable doubt, are defective. The court did clearly announce to the jury the rule as usually given, covering the presumption of innocence and the requirement that before conviction the guilt of a defendant must be established to a moral certainty, and that if there is reasonable doubt remaining the defendant should be acquitted.

[14] Appellant contends that the court erred, in excepting the witnesses who were police officers, from its order granting appellant's request that all witnesses, while not testifying, be excluded from the courtroom. These officers were the witnesses who subsequently gave testimony covering defendant's admission to them of the fact that he was driving his car at the time of the accident. On examination of the transcript we find that the attorney for defendant objected to the presence of the police officers, for the reason that they would be important witnesses. No attempt was made to more definitely inform the judge concerning their relation to the case or the relative importance of the testimony to be given by them. The general rule is that the matter of exclusion of witnesses, and of exceptions to be made in such orders of exclusion, is discretionary; and that in the exercise of this discretion error will not be implied. In this instance, in the absence of any more particular showing to the trial court of prejudice that would probably arise from the presence in court of these persons, it does not appear that there was any abuse of discretion in the order as made.

[15] As has been stated, we think that the court erred when it sustained the objections to the questions asked of the witness Mitchell concerning the tests made by him at said street intersection, on the evening of September 21st. It only remains to determine whether it is reasonably probable that the exclusion of that evidence prevented the defendant from having a fair trial. For the purposes of this question we must assume that if he had been permitted to answer the questions, Mitchell would have testified that at the time stated, while standing at the points indicated in the questions, he would not have been able to tell whether a car

driven west on State Street, and crossing said intersection, passed to the left, or whether it passed to the right, of the center line of said intersection. We further assume (although it is not in the record), that it would have been proved that Mitchell had normal eyesight. The facts concerning the collision were established by six eye-witnesses. These were Mr. and Mrs. Elkins, Mr. and Mrs. Voss, and Mr. and Mrs. Rickert. These witnesses are in substantial agreement that the night was clear and that the light was such that they had no difficulty in seeing. Mr. Elkins saw the collision, but could not state just where the cars came together. He stated, however, that the roadster when it was struck "pivoted on about fifteen feet further, whirled around and turned over," and that he found it lying about fifteen feet south of the south curb line of State Street. Mrs. Elkins stated that she saw the Ford roadster hit in the rear by a Ford coupe, and that the roadster when it was hit was south of the center line of State Street. Mr. Voss stated that the accident took place at the southwest corner of the intersection and south of the center line of State Street. Mrs. Voss stated that the impact occurred south of the center line of State Street. Mrs. Rickert stated that at the time of the impact the Ford roadster had cleared the center line of State Street. Mr. Rickert stated that at the moment of impact the Ford roadster was about halfway between the center of the intersection and the south curb line of State Street.

There is nothing in the record tending to impeach the integrity of any of these six witnesses. They all agree that the light was sufficient for them to see clearly. Their testimony leaves no reasonable doubt that at the time of the collision defendant's automobile was driven on the wrong side of the road and there is no evidence to the contrary. In view of the overwhelming effect of this evidence, it is almost impossible to believe that the jury could have found the fact to be contrary to the testimony of these witnesses, even if Mitchell had testified that at the time of the experiments made by him—and even if made under like conditions—he would not have been able to see whether an automobile was or was not south of the center line of State Street. It is our conclusion that the error which we have

found in the court's ruling in respect to this matter did not lead to any miscarriage of justice.

The judgment and order are affirmed.

Houser, J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 2, 1926.