[Crim. No. 37. Fourth Appellate District.—January 13, 1931.]

THE PEOPLE, Respondent v. W. C. BLACK, Appellant.

Raymond E. Hodge for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford for Respondent.

BARNARD, P. J.—The defendant was found guilty of the crime of manslaughter. The evidence discloses that on the evening of June 7, 1930, at about 8:30 P. M. at the intersection of Mt. Vernon and Rialto Avenues in the city of San Bernardino, one Mrs. Minear was struck and killed by an automobile. Mt. Vernon Avenue is a main highway and Rialto Avenue is 54 feet wide from curb to curb. The corner was poorly lighted, and the intersection was a blind intersection within the meaning of the California Vehicle Act. The only eye-witness was sitting in his parked machine at a service station on this corner and was facing the intersection. He testified that a man in a Graham-Paige sedan, traveling north on Mt. Vernon Avenue, ap-

proached the intersection at a speed of about 35 miles per hour. His attention was first attracted to the car by the speed at which it was coming. He first saw the car when it was 10 or 15 feet from the south line of the intersection. In a small fraction of a second thereafter, and when the car was about entering the intersection, the brakes on the car were applied. He heard the noise of the tires skidding on the pavement, and continued to watch the car, which went in a northeasterly direction for approximately 10 feet, straightened up, and continued in the same direction for almost 45 feet, then turned sharply to the left. About 10 feet north of the north curb line of Rialto Avenue the car struck a woman and threw her a distance of about 30 feet. As her body was going through the air, the car was swinging around to face a westerly direction. The car stopped for about 10 seconds and then immediately started up and sped westerly on Rialto Avenue. Other witnesses testified as to the screeching of the brakes, the skid marks on the pavement, and other matters observed immediately after the collision. The car skidded about 64 feet in a northerly direction, and either came to a stop or practically to a stop, facing almost west. Broken glass and a rim from one of the headlights were found near the point of collision. The only eye-witness saw the deceased just before she was struck by the car but did not see which way she was walking.

Appellant's first and principal contention is that, assuming that he was the driver of the car in question, the evidence is not sufficient either to show the commission of an unlawful act not amounting to a felony, or to show that the automobile was driven without due caution and circumspection. In particular, it is urged that it was incumbent upon the prosecution to show that the manner in which the car was driven was the proximate cause of the injuries to the decedent, and to show affirmatively that her injuries were not caused by her own negligence. In our opinion, the facts here shown are sufficient to sustain the finding of the jury, that the accident was due to the negligence of the driver of the car in question. The testimony as to the speed at which the car entered the intersection, the distance and manner in which it skidded, and the distance it knocked the deceased, are sufficient to sustain the finding of the

jury that the car was traversing the intersection at a speed greater than 15 miles per hour, and that it was not being driven with due caution and circumspection. The law is settled that the prosecution, under such circumstances as existed here, is not required to negative contributory negligence on the part of the deceased. (*People* v. *Halbert,* 78 Cal. App. 598 [248 Pac 969, 970]; *People* v. *McKee,* 80 Cal. App. 200 [251 Pac. 675].) There is nothing in the evidence to show that the deceased was guilty of any negligence. The evidence shows negligence on the part of the driver of the car, and this evidence is sufficient to sustain the finding of the jury that such negligence was the proximate cause of the injuries to deceased. It is difficult to imagine any negligence of which the deceased might have been guilty, which would have, under the circumstances, constituted the sole proximate cause of the injuries she received, as distinguished from contributory negligence. If she crossed at the wrong place, or in attempting to escape turned back in her tracks, either would not be the sole cause of the accident under the conditions here appearing. While it is possible, as suggested by appellant, that the deceased may have purposely thrown herself in front of the car for the purpose of being killed, such an act would have been wilful, and not merely negligent, and such a possibility is not sufficient to create a reasonable doubt. In a prosecution for manslaughter involving a bullet fired from a gun, we apprehend the prosecution would not be required to establish affirmatively that the deceased did not move a few inches into the pathway of the bullet, in order to commit suicide. While it was incumbent upon the prosecution in this case to show that the proximate cause of the accident was the manner in which the car was driven, we think this burden was met, and that it was no more the People's duty to negative this unreasonable possibility, than it was to make such additional proof as to the actions of the deceased in the case of *People* v. *Halbert,* just cited.

 It is next argued that the appellant was not identified as the driver of the car in question. The car which struck deceased was a Graham-Paige sedan. As it sped away, it was observed to bear a dealer's license, number 2455. Appellant was an automobile dealer. He was known to have driven prior to the accident a car similar to the one

which struck the decedent and he had been seen in such a sedan, bearing dealer's license number 2455. Later that night a Graham-Paige sedan answering the description of the car seen at the place of the accident, was found abandoned about four or five miles north of Colton, a city which almost adjoins San Bernardino. It bore the same license number. The glass and a metal rim were gone from the headlight. The rim found at the scene of the accident fitted the abandoned car. The shutters on the front of the radiator were caved in close to the right headlight. Later, appellant claimed this car and wanted it returned to him. A witness, a salesman formerly employed by appellant, testified that on the day following the accident, he received a phone call from appellant asking him to meet him on the outskirts of San Bernardino, and that the following conversation there took place between them: "I said: 'Black, I understand the police are looking for you. I have heard that there was an accident' and I said 'It seems that you are very much wanted' and he made no reply just at that moment. Later on he said 'Well, I have had an accident' but he said 'I am in very much of a turmoil and I need help' and I said 'The best thing for you to do is to get yourself a good attorney and go right down to the police department and turn yourself over to them and explain to them the conditions,' and I says 'That would be the fair way to do.' I asked him at the time if he was in the accident and I could get no direct reply and I asked him why he did not stop. 'Well,' he said 'I had had a drink before the accident and I was afraid they would accuse me of being intoxicated.' . . . Black said that he needed assistance at the time and I said 'Black, if you did have this accident I don't want to be a party to it before or after.' In fact, I said 'it is a serious offense if you did have this accident relative to the woman that was killed the night before'. Well, he said 'I need a lot of help right at this time,' so my advice was to him to get an attorney which I repeated again. So he said that he would get an attorney and I asked him to turn himself over to the police to eliminate any further bother to them and I said 'if you did have the accident, it was a case of excitement, and explain it thoroughly'. . . . I said 'Even under those conditions, why didn't you stop?' He said 'I was panicky at the time, that is the reason I did not stop.'

. . . I said 'Where did you leave your car?' He said he drove it back towards Colton; that was as much information as I remember that he gave me at that time about that. I said 'How did you get over in San Bernardino?' He said he walked over." We think this evidence is sufficient to identify appellant as the driver of the car in question.

Appellant's next contention is that the above conversation was not admissible for the reason that at the time it was received in evidence there had been no proof of the *corpus delicti*. This argument is based upon the claim that it had not been shown that the manner in which the car was driven was the proximate cause of the accident, in that it had not been shown that it was not due to the negligence of the deceased. Not only is this contention covered by what we have already said on that subject, but *prima facie* proof of the *corpus delicti* was sufficient to make this evidence admissible. In *People* v. *Selby*, 198 Cal. 426 [245 Pac. 426, 429], the court said: "Concerning the *admissibility* of extrajudicial statements, admissions or confessions it has been correctly declared that 'Proof of the *corpus delicti* of the conclusive and convincing character required to support a conviction of the crime charged was not a prerequisite to the reception in evidence of the extrajudicial statements of the defendant that he had killed the deceased. *Prima facie* proof of the *corpus delicti* was sufficient for that purpose; and it was not essential to the proof and purpose to show that the crime charged was committed by the defendant.' "

And then after reviewing the authorities, the court added: "It is apparent from this review of the cases that the general trend of authority has been to hold that upon *prima facie* proof of the *corpus delicti* the extrajudicial statements, admissions, or confessions of the accused may be *admitted* in evidence and having been so properly admitted they may, with the evidence *aliunde,* be considered by the jury in its determination whether or not all the elements of the crime and the connection therewith of the accused have been established to a moral certainty and beyond all reasonable doubt."

In commenting upon a state of facts somewhat similar to those appearing in this case, and where the presence of the defendant's automobile upon the wrong side of the road was

held sufficient evidence that he was driving without due caution and circumspection, the court in *People* v. *Halbert, supra,* said: "The foregoing statement of facts shows that the evidence was sufficient to prove that the driver of the Ford coupe was guilty of involuntary manslaughter. The only additional fact necessary to sustain the conviction would be the fact that the defendant was the driver of the Ford coupe. The *corpus delicti* having been established by evidence apart from any admission or confession made by defendant, there remains no doubt that the fact that the defendant was the driver of the offending machine may be established by admission made by him of that fact."

And also: "It follows also that the *corpus delicti* consisting of a crime committed by the driver of appellant's automobile, was established by competent evidence exclusive of any confession or admission made by the defendant. We thus arrive at the conclusion, applicable to the third count as well as to the first count of the information, that there is no merit in appellant's contention (based upon the claimed absence of competent proof of the *corpus delicti*), that the court erred in receiving evidence of his admission that he was in fact the driver of his automobile at the time of the collision."

We think the conversation was properly admitted in evidence, that the appellant was sufficiently identified as the driver of the car, and that the question of proximate cause was correctly submitted to the jury.

■ Appellant next complains of certain instructions given to the jury. The first is instruction No. 7, which reads as follows:

"You are instructed that section 121 of the California Vehicle Act, as amended in 1929 (Stats. 1929, p. 539, sec. 49), defines 'reckless driving' as follows: 'any person who drives a vehicle upon a public highway in so negligent a manner as to 'indicate either a wilful or wanton disregard of the safety of persons or property, shall be guilty of reckless driving, and upon conviction shall be fined, etc.

. . .

"And in this connection you are instructed that if the jury believe from the evidence in this case, beyond a reasonable doubt, that the defendant, W. C. Black, or on about the 7th day of June, 1930, in the said County of San

Bernardino, State of California, did drive a motor vehicle upon a public street or highway, to-wit: Mt. Vernon Avenue, at or near the intersection of said Mt. Vernon Avenue with Rialto Avenue, in said City of San Bernardino, in so negligent a manner as to indicate a wilful or wanton disregard of the safety of persons or property and while so driving said automobile did drive the same upon and against one Florence Minear with such force and violence as to cause the death of said Florence Minear, then you must find the defendant guilty as charged in the information.''

This is objected· to as instructing the jury that they might leave out of consideration the negligence of the deceased. In other words, that it left out the question of proximate cause. A similar question was raised in the case of *People* v. *McKee*, 80 Cal. App. 200 [251 Pac. 675, 677], where a similar instruction was given, although based upon a different violation of the California Vehicle Act. In commenting upon this contention, the court said: ''Appellant's next assault upon this instruction is based upon his contention that the jury were permitted by it to find the defendant guilty, though the intoxication was not the proximate cause of the accident. The jury were told in other instructions that the gross or culpable negligence or the operation of the machine with a reckless disregard for the safety of others must be the cause of death, and instruction No. 14 stated to them that death must proximately result from such operation. Taken as a whole, we think they correctly stated the law in this particular. However, relating to this point, appellant urges that the instruction permitted the jury to disregard the contributory negligence of the deceased. They were told, and correctly so, in another instruction that it was no defense.''

In the instant case, the jury was fully instructed as to the matter of proximate cause and as to the necessity of finding that the accident occurred because of the unlawful driving of the car in question, and not because of any negligent act of the deceased, in the following two instructions:

''No. 2.

''You are instructed that contributory negligence, that is negligence on the part of the person injured, which contributed to the injury, is no defense. You are instructed,

however, that if you believe that the person injured in this case was injured and killed as a result of her own negligence, that is to say, that her own negligence was the proximate cause of her death, or if you have any reasonable doubt whether such is the case or not, you must acquit the defendant.''

"No. 3.

''You are instructed that the killing of a human being in the commission of an unlawful act not amounting to a felony is manslaughter, where a causal connection exists between the unlawful act and the death. You are instructed in this connection, however, that the mere fact that you may believe from the evidence beyond a reasonable doubt that the defendant committed an unlawful act, not amounting to a felony, and that while committing such unlawful act, the defendant caused the death of a human being, such is not sufficient to sustain a charge of manslaughter. There must be, in addition, a causal connection between the commission of the unlawful act and the death.''

Appellant also complains of instruction No. 17, which reads as follows:

''You are instructed that a person who drives an automobile upon a public highway or street in so negligent a manner as to indicate either a wilful or wanton disregard of the safety of persons or property is guilty of a misdemeanor.

''And in this connection you are instructed that if you believe, beyond a reasonable doubt, that the defendant did operate an automobile upon a public street or highway at the time and place alleged in the information in so negligent a manner as to indicate either a wilful or wanton disregard of the safety of persons or property, and that while so operating said automobile he struck and killed the deceased, Florence Minear, then you will find him guilty, and you cannot excuse or acquit him of the crime on the ground of an unavoidable accident or on the theory of misfortune, neither can you acquit him on the grounds that said Florence Minear may have been guilty of negligence, which contributed to the accident under such circumstances.''

In this instruction the jury were, in effect, told that if the defendant was operating his car in an unlawful manner, and while so doing struck the deceased, that such an event

would not constitute an unavoidable accident; and also that any contributory negligence of the deceased would not be a defense. While neither of the instructions complained of contains all of the law, neither is erroneous upon the points covered, and all of the instructions, taken together, disclose that the jury was fully and completely instructed that they could not find the defendant guilty unless his negligence was the proximate cause of the accident, nor in the event they found the accident was caused by the negligence of the deceased.

The only other point raised by the appellant is that the district attorney was guilty of misconduct in a certain remark made in his argument to the jury. Not only was this not repeated and fully covered by an instruction of the court, but appellant admits that, in itself, it would not be sufficient to constitute reversible error.

The judgment is affirmed.

Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal, on January 26, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1931.