STATE *vs.* GABRIEL B. SANANTONIO.

DECEMBER 4, 1963.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

CONDON, C. J. This is an indictment for operating a motor vehicle on a public highway in reckless disregard of the safety of others, resulting in death. The defendant was found guilty by a jury in the superior court and the trial justice denied his motion for a new trial. The case is here on his bill of exceptions to an evidentiary ruling, to the denial of his motion for a directed verdict, to two portions of the charge to the jury, and to the denial of his motion for a new trial. These exceptions are numbered 5, 6, 7, 8 and 15. All other exceptions in the bill have been expressly waived.

The alleged offense was committed on Reservoir avenue at its intersection with Lawnacre Drive, in the city of

Cranston, shortly before noon on Sunday, November 19, 1961. Reservoir avenue runs north and south and has two lanes each for northbound and southbound traffic. A cement chatter strip so called separates the northbound lanes from the southbound except at the intersection of Lawnacre Drive. There is a stop sign for traffic entering the avenue from the drive. At this point the avenue is 64 feet wide and the posted speed limit is 40 miles per hour.

According to the state's evidence defendant was driving his car along the northbound passing lane on Reservoir avenue at a speed between 50 and 60 miles per hour as he approached the Lawnacre Drive intersection. At that time and place, a car driven by John Bello which had entered the avenue from Lawnacre Drive was crossing the intersection. The front of the Bello car had crossed the northbound lanes and was entering the southbound lanes when defendant's car swerved to its left and collided with the Bello car with such force as to throw Bello out of his car into the highway, as a result of which he suffered injuries that caused his death within two hours.

After the collision defendant's car continued for a considerable distance northerly along the inside southbound lane of the avenue and came to a stop at the westerly curb. There were at least two eyewitnesses to the accident, John P. Tocco and his wife Diana, who testified for the state. Another, Antonio Ursillo, who claimed to have witnessed it, testified for defendant. His credibility, however, was impaired by the testimony of several of the state's witnesses who stated that they had not seen him at the scene of the accident. The defendant did not testify.

Mr. Tocco testified that he was driving in the southbound lane of the avenue and saw defendant's car approaching the Lawnacre Drive intersection. He estimated its speed at about 50 miles per hour and that it could have been 60. He further testified that the Bello car which had

stopped at the stop sign on the drive was crossing the avenue and had entered the southbound lane when defendant's car which had not slowed down swerved to its left into that lane and collided with the Bello car. He said that it did not stop until it reached the curb of the inside southerly lane. It was then headed northerly.

Mrs. Tocco, who was sitting in the front seat beside her husband, testified that she saw defendant's car collide with the Bello car and that the accident occurred in the middle of the southbound lanes of the avenue. She also testified that defendant's car was then traveling north in the southbound lane and that the accident occurred in the passing lane.

The defendant's witness Ursillo testified that he was driving in the southbound lane and saw decedent's car coming out Lawnacre Drive as defendant's car approached the intersection and that to avoid it defendant swerved his car to his left. Mr. and Mrs. Tocco and other witnesses who were at the scene of the accident testified that they did not see Ursillo there. Whether his credibility was impeached by that testimony was, of course, a question for the jury and apparently they were not persuaded that the proximate cause of the accident was due to negligence on the part of Bello rather than to defendant's negligence. Obviously by their verdict they must have concluded to the contrary that the evidence proved defendant negligently operated his car in reckless disregard of the safety of Bello and that regardless of the lack of care which Bello may have exercised such reckless disregard was the proximate cause of Bello's death.

At the conclusion of the evidence defendant contended that there was nothing therein from which the jury could draw an inference directly or indirectly that prior to the collision he was driving in the manner alleged in the indictment. He therefore moved for a directed verdict. In

support of such motion he argues that at most the state's evidence shows that he exceeded the posted speed limit to the extent of 15 miles per hour and that such fact standing alone does not constitute proof of reckless driving within the meaning of the statute. The trial justice did not agree with this view of the evidence and denied the motion. After carefully considering all the evidence and viewing it most favorably to the state as we are bound to do, we are of the opinion that he did not err. *State* v. *Montella,* 88 R. I. 469. The defendant's exception numbered 6 to the denial of his motion is therefore overruled.

During the trial defendant sought to introduce into evidence the original and duplicate of decedent's driver's license which limited his right to drive only while wearing eyeglasses. Apparently, defendant intended thereby to lay the foundation for offering evidence or raising an inference to the effect that decedent was not wearing eyeglasses at the time of the accident and therefore was driving unlawfully on the highway. The trial justice excluded such evidence as immaterial.

Under exception numbered 5 defendant contends that the ruling resulted in prejudicial error on the ground that the jury was thereby deprived of considering the conduct of the decedent as contributing to the accident. He cites several cases from other jurisdictions which he claims support his position. We have examined those cases and find none of them in point on the precise situation here. They simply hold that the decedent's conduct along with all other circumstances is proper for the jury to consider in determining whether the negligence of the accused was the proximate cause of the decedent's death. Whether the decedent was lawfully or unlawfully on the highway was neither relevant nor material to the issue in the case at bar. It was without probative value on the question whether defendant was guilty of negligent driving to such an extent

as to be the proximate cause of decedent's death. In our opinion the trial justice's ruling was correct and exception numbered 5 thereto is overruled.

Exception 7 was taken to the following portion of the trial justice's charge: "We are not concerned with the behaviour of Mr. Bello in crossing that highway. Even if you did think that this accident was caused because of the careless operation of Mr. Bello as well as that of the defendant, that has nothing to do with this case." In our opinion there is no merit in this exception. If the trial justice's language is considered in the context of his charge as a whole it is clear that he was instructing the jury to the effect that if they found from the evidence that the accused was negligent to the extent laid in the indictment they were not to be concerned with the question whether the decedent was also negligent and thereby contributed to his death. This is substantially the view of the law taken by all courts in a case of this kind. In fact it is universally held that whether the decedent's own reckless conduct contributed to his death is of no consequence so long as the evidence shows that the conduct of the accused was a proximate cause of such death. The following cases are particularly illustrative of this view. *Commonwealth* v. *Peach,* 239 Mass. 575; *Commonwealth* v. *Root,* 191 Pa. Super. 238; *People* v. *Black,* 111 Cal. App. 90; *People* v. *Rewland,* 335 Ill. 432; *State* v. *Campbell,* 82 Conn. 671. Exception 7 is therefore overruled.

Exception 8 is to the following portion of the charge: "Bear in mind also, that the Cranston Police Department is not on trial. The issue is clear. Don't let any side issues get your attention away from what it is that the jury is to determine here." This exception is so clearly lacking in merit that even defendant has failed to argue it in his brief except to state: "This is clearly prejudicial to the defendant as the court in so charging has commented on the credibility

54

of certain witnesses, namely the Cranston police." We fail to see such prejudicial error and therefore this exception is overruled.

Exception 15 is to the denial of the motion for a new trial and here again the defendant's brief is remarkable for the paucity of argument in support of the exception. After reading the transcript we are of the opinion that the trial justice exercised his independent judgment in passing on the motion, as is quite obvious from the statement in his decision "that if I had been hearing this case without a jury, I would have found the defendant guilty, and I think the Jury's verdict was completely sound * * *." In the circumstances we cannot say that his decision was clearly wrong and therefore the exception thereto is overruled.

All of the defendant's exceptions briefed and argued are overruled, and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent*, Attorney General, *Francis A. Kelleher*, Assistant Attorney General, for State.

*Charles A. Curran, Harold I. Kessler*, for defendant.