251 A.2d 541.
STATE *vs.* EDWARD W. MARSHALL.

MARCH 24, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

---

KELLEHER, J. This indictment charges the defendant with operating a motor vehicle on a public highway in reckless disregard of the safety of others—death resulting. A superior court jury found the defendant guilty and the trial justice denied his motion for a new trial. While the defendant filed a bill which contained numerous exceptions, he has limited his appeal to those four exceptions which concern the denial of his motion for a directed verdict, the denial of his motion for a new trial and two alleged erroneous statements made by the trial justice in his charge to the jury.

The alleged offense took place about 1:30 a.m. on Saturday, October 6, 1962, on Broad Street in the City of Central Falls. Broad Street is one of the city's main thoroughfares. It runs in a north-south direction. The roadway measures 35 feet 11 inches in width and is divided into four

lanes. At some locations on the road, parking is permitted on both sides of the street. However, in the area of Broad and Blackstone Streets parking was permitted only on the easterly side of Broad Street.

The evidence shows that on October 5, 1962, defendant, a resident of Woonsocket, finished his work in Providence at 9:45 p.m. He then drove to Pawtucket where, according to his own words, he was to look for buddies and do some drinking. He arrived in Pawtucket at 10:30 p.m., went to a cafe where he drank a bottle of beer. Upon leaving the cafe, defendant met a friend who was looking for a ride to Cumberland. He drove his friend to Cumberland and then stopped at a local cafe. Here defendant drank two bottles of beer. So fortified, he returned to Pawtucket and stopped at a cocktail lounge. It was now midnight. In the next hour and a half, defendant consumed two additional bottles of beer and two rum cokes. Having seen his buddies and done some drinking, Marshall left the lounge, entered his automobile and drove north on Broad Street homeward bound. It was approximately 1:30 a.m. It was raining heavily.

As defendant proceeded along Broad Street, he passed Joseph P. Faucher who was standing on the easterly sidewalk. Mr. Faucher told the court and jury that his attention was directed toward defendant's car because the noise of its engine and noise of the splashing water as the car came toward him. This witness estimated the speed of defendant's automobile as being in excess of 70 miles per hour. He kept the car in sight as it passed him. Some 200 yards to the north, he observed it strike the left rear of another automobile which was travelling in the same direction. This second vehicle then mounted the sidewalk and struck a utility pole located at the southeasterly corner of Broad and Blackstone Streets. The front seat passenger in this car, Ruth Odette, received substantial injuries and died

within a matter of minutes. The Central Falls police received notice of the accident at 1:45 a.m.

The defendant testified and took little issue with any of the testimony offered by the prosecution. He admitted that he was quite familiar with this area of Central Falls. He acknowledged drinking five bottles of beer and two rum cokes prior to the collision but disagreed with Mr. Faucher's estimate of his speed. Marshall stated that he was going 50 miles per hour just before the collision. He conceded that his speedometer was not operative on this particular evening and it had not been in working order for six months. The defendant did not see the other northbound car until he was 100 feet to its rear. He applied his brakes, the car skidded and thereafter the right front portion of his car struck the left rear of the other automobile. There is suggestion in the evidence that at one point defendant attempted to pass the car in front of him but changed his mind when he saw the headlights of the southbound traffic.

The operator of the other car, Mr. Louis D. Joinville, testified that he was proceeding in the northbound travel lane at between 15 to 20 miles per hour when he was struck in the rear by defendant. The collision, he said, took place near the Broad and Blackstone Streets intersection. Mr. Joinville remembers nothing after the first impact. He was hospitalized for three months following this occurrence.

The Marshall vehicle was found midway in the Broad and Blackstone Streets intersection. The Central Falls police department placed the contact point of impact between the two automobiles as being 71 feet south of the midpoint of the intersection. The debris which indicated the initial point of contact was midway between the easterly curb and the white line marking the center of Broad Street.

In our opinion, defendant's exception to the denial of

his motion for a directed verdict needs little discussion. Such a motion imposes a duty on the trial justice to consider all the evidence in a light most favorable to the state. Let us review the evidence, as we must, in this posture. On a rainy night, defendant after having imbibed a substantial amount of intoxicants, drove his automobile upon a well-illuminated highway at a rate of speed two or three times in excess of the admitted speed limit and struck another car in the rear causing the second motor vehicle to mount the adjoining sidewalk and strike a pole. An idea as to the force of the initial impact can be seen by examining the police photographs of the Marshall car. The hood fell off the car and the windshield wipers and wiper arms are missing. A veteran officer of the Central Falls police department said the wiper equipment was torn away by the force of the crash between the two cars. The deceased suffered substantial injuries which a qualified expert attributed to defendant's operation of his automobile. Here the combination of defendant's speed, his admitted consumption of alcohol together with the abhorrent weather conditions of the night in question amply justified the denial of defendant's motion for a directed verdict. This same record warranted the jury's finding of guilt.

Our analysis of the transcript shows that in considering defendant's motion for a new trial, the trial justice properly, in reviewing all the pertinent evidence, exercised his independent judgment and then affirmed the jury's verdict. See *State* v. *SanAntonio*, 97 R. I. 48, 195 A.2d 538.

The remaining exceptions concern defendant's objections to two parts of the trial justice's instructions to the jury. In his bill of exceptions, the first exception reads:

> "An exception to that portion of the charge in which the Court charged that it is admitted that the woman, Ruth Odette, died as a result of injuries which came as a result of the accident. * * *"

The defendant argues that he never admitted that the

passenger's death was the result of his conduct. What defendant overlooks, however, is the inaccuracy of the language he uses in his bill of exceptions. The trial justice did not tell the jury that defendant conceded his conduct resulted in Ruth Odette's decease. What he actually said is as follows:

> "Now, then, under the charge stated in this indictment what was the State duty-bound to prove? It was bound to prove beyond a reasonable doubt that on the night and at the time and place in question the defendant was operating a motor vehicle in reckless disregard of the safety of others and that as a result thereof he caused Ruth O'Dette to receive injuries of which she died. Well, now, that there was a collision between the car operated by the defendant and the one in which Ruth O'Dette was riding as a passenger is undisputed; that the said Ruth O'Dette died as a proximate result of injuries received in said collision is likewise *undisputed* * * * ." (italics ours)

The trial justice in using the word "undisputed" was quite accurate. During the trial, the medical examiner for the Blackstone Valley District testified. He said that the passenger suffered fractures of her skull, vertebrae, jaw and the lower extremities. The witness further declared that these injuries caused the death and the death was the result of defendant's car striking the Joinville vehicle. The defendant did not cross-examine the physician as to any of his conclusions nor did he offer any medical evidence to counter that given by the state's witness. When the trial justice used the word "undisputed," he was correctly describing the state of the evidence as it therein appeared. In essence, he informed the jury that the medical examiner's testimony was unchallenged. We can fathom no prejudice to defendant's cause because of this observation by the superior court. Indeed, it can be seen, by reviewing the complete charge that the jury was told that the burden was upon the prosecution to prove beyond a reasonable

doubt that defendant operated his automobile in a reckless manner and that the Odette death was the result of this conduct.

Lastly, defendant excepts to the following statement made in the charge by the trial judge as he summarized the evidence adduced at the trial:

> "Now, the foregoing are the salient facts and circumstances preceding and surrounding this tragic happening. What caused it? The condition of the weather? The condition of the roadway? The defendant's drinking? The defendant's speed, admittedly excessive and made more so by the weather and the defendant's drinking? Or was it a concurrence of all these elements and circumstances? Whatever it is, you will tell us by your verdict whether they indicate the operation of a motor vehicle in reckless disregard of the safety of others."

The defendant complains that this comment prejudiced the jury because it stressed the prosecution's side of the case without pointing out the importance of his side. He contends that the trial court's remarks excluded from the jury's consideration the question of whether the conduct of Louis D. Joinville was the proximate cause of Ruth Odette's death. We are well aware that when a trial justice undertakes to refer or to review evidence, he must do so impartially. *State* v. *Douglas,* 78 R. I. 60, 78 A.2d 850. However, in so doing he need only refer to that evidence which is relevant to the issues before him.

The record is bare of evidence that Joinville did anything that caused his automobile to go up onto the easterly sidewalk of Broad Street and strike the corner pole. The defendant himself told the jury that he saw the Joinville car 100 feet in front of him and that within another two seconds struck it in the left rear. The car then catapulted into the pole. On the state of the record, there was no necessity for the trial justice to even allude to whatever in-

stinctive reaction Joinville might have had as his car was struck.

At the conclusion of the testimony in this case, the single question before the jury was whether it believed that the defendant was operating his automobile in reckless disregard of the safety of others and whether his conduct was a cause of Ruth Odette's demise. Nowhere is there any evidence which would have made a consideration of Mr. Joinville's conduct a material issue in this proceeding. Indeed, if defendant had not struck the Joinville automobile, the grand jury would never have been called upon to return the indictment which is the subject of this appeal.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for further proceedings.

Motion for reargument denied.

*Herbert F. DeSimone,* Attorney General, *John D. Archetto,* Special Assistant Attorney General, for plaintiff.

*Paul E. Kelley,* Assistant Public Defender, for defendant.