STATE

v.

Kevin P. DIONNE.

No. 80–225–C.A.

Supreme Court of Rhode Island.

March 12, 1982.

---

Dennis J. Roberts II, Atty. Gen., Michael J. McEntee, Sp. Asst. Atty. Gen., for plaintiff.

Norman L. Grant, Pawtucket, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant, Kevin P. Dionne, from a judgment of conviction on an information charging him with operating a motor vehicle on a public highway in reckless disregard of the safety of others, with death resulting, in violation of G.L. 1956 (1968 Reenactment) § 31–27–1. The defendant assigns as error certain evidentiary and other rulings.

The alleged offense occurred on Sandy Lane at its junction with Crane Street, a side road, in the city of Warwick at approximately 2 p. m. on December 23, 1976. Sandy Lane runs both east and west and is sufficiently wide to allow two lanes of traffic both eastbound and westbound, although the road has no lane markers. Two solid yellow lines divide the eastbound and westbound lanes except at the junction of Crane Street. There are no traffic control lights in the vicinity of Crane Street. In this area, Sandy Lane runs straight and the posted speed limit is thirty-five miles per hour.

The state's evidence concerning the events that occurred prior to and during the fatal accident consists essentially of the testimony of three witnesses, Thomas Williams, Ellen Cyronak, and Robert Pemberton. Williams testified to the following facts. He was driving his car eastbound on the inside lane of Sandy Lane on the day of the accident. At approximately one-half mile to one mile before the Crane Street junction, defendant's car, proceeding in the eastbound lane, passed Williams at a speed that Williams estimated to be in excess of sixty miles per hour. After defendant's car had overtaken him, Williams observed it cross the yellow center lines and drive in the passing westbound lane while it passed another car. After defendant's car had performed this maneuver, it returned to the easterly side of Sandy Lane and continued on its way.

Ellen Cyronak was also driving her car on the inside lane eastbound on Sandy Lane at the time the accident occurred. She testified that defendant's car had passed her at such a high rate of speed that she had remarked to her passenger, "Look at that car go." She further testified that after defendant's car had overtaken her, she saw it turn toward Crane Street. Upon reaching the Crane Street area and discovering that defendant's car apparently had struck someone, Cyronak yelled, "You nut," or words to that effect, at defendant.

Robert Pemberton, the only eyewitness to the accident, testified that he had been driving his car on the westbound side of Sandy Lane and that he had observed the victim on a bicycle riding ahead of him, in the same direction, along the edge of the curb. Pemberton stated that he had observed defendant's car, which he estimated to have been traveling at a rate of approximately fifty miles per hour, cross the center lines and move into the westbound lanes of Sandy Lane toward the Crane Street junction. He further testified that the bicyclist, apparently unaware of the impending danger, was crossing the Crane Street junction at this time, and she was struck by defendant's car.

The defendant's version of that day's events was as follows. He was driving at a speed of approximately forty-five to fifty miles per hour in the eastbound passing lane of Sandy Lane as he approached Crane Street. Because his path in that lane was blocked by a white Cadillac moving at a slower rate of speed, he attempted to pass the Cadillac by moving into the inside lane of the eastbound side of the road. As he was about to overtake the Cadillac, the Cadillac turned into the eastbound inside lane, cutting off defendant's car. In order to avoid a collision, defendant turned the wheel sharply to the left and applied the brakes lightly. Upon realizing that his car had crossed the yellow center lines and had entered the westbound side of Sandy Lane, defendant turned the wheel to the right and applied the brakes heavily. This maneuver caused the car to skid toward Crane Street junction, where it struck the victim. The sole passenger in defendant's car that day, Timothy Buckley, gave testimony essentially identical to that given by defendant.

I

The defendant initially contends that the trial justice erred in denying defendant's motions to dismiss the charge under Rule 48 of the Superior Court Rules of Criminal Procedure because of unnecessary delay in bringing him to trial. Accordingly, a brief recitation of the travel of the case is required.

The defendant was arraigned on February 28, 1977. The case was assigned for pretrial conference on June 2, 1978, and was reassigned to June 16, 1978, at the request of defendant. On June 23, 1978, the case was assigned to the fall calendar for trial. On September 26, 1978, the case was reassigned; it was not reached for trial until May 30, 1979. On May 31, 1979, the trial justice granted the state's request for a continuance, continuing the case to June 20, 1979. On June 22, 1979, however, the trial justice again continued the case. The trial finally commenced on October 11, 1979.

The defendant filed a written motion to dismiss the charge pursuant to Rule 48(b) on February 9, 1979, and made oral motions to dismiss on May 31, 1979, and June 20, 1979, on the ground that he had been deprived of a speedy trial. All of these motions were summarily denied. On October 9, 1979, shortly before the trial, defendant renewed his motion to dismiss under Rule 48(b). After hearing oral argument but without holding an evidentiary hearing, the trial justice denied defendant's motion.

■■■ Rule 48(b) allows the court to dismiss an indictment, information, or complaint if there is unnecessary delay in bringing a defendant to trial. Because the rule is broader than the constitutional right to a speedy trial, it permits dismissal of an indictment even though no constitutional violation has occurred. *State v. Paquette*, 117 R.I. 505, 510–11, 368 A.2d 566, 569 (1977). In ruling on a motion to dismiss under Rule 48(b), the court should consider only whether the delay was unnecessary. The defendant need not make a showing of prejudice, nor must he have asserted his right to a prompt trial. Once the defendant shows that he was not responsible for the delay, he has established a prima facie case of unnecessary delay, and the burden of justifying the delay then shifts to the state. *Id.* at 511, 368 A.2d at 569. A motion under Rule 48(b) is addressed to the sound discretion of the court. The trial justice's ruling, therefore, will be set aside only if there is a clear abuse of discretion. *State v. Grover*, 112 R.I. 649, 652, 314 A.2d 138, 139 (1974).

■■■ The trial in this case commenced over thirty-one months after the arraignment. The record indicates that none of this delay was properly attributable to defendant other than a two-week period in June 1978. The state, therefore, bore the burden of justifying the remainder of the delay. The state, however, never submitted a memorandum in opposition to defendant's motions to dismiss; and in its oral argument at the October 9, 1979 hearing on the motion, it failed to offer any explanation for much of the delay. Consequently, the record is silent regarding why it took fifteen months from the date of the arraignment for the case to be put on the calendar for pretrial conference, or why eight months elapsed before the case was called for trial after being continued on September 26, 1978.

Because the record is barren concerning the reasons for much of the delay in this case, we cannot properly determine whether the trial justice abused his discretion in denying the motion to dismiss under Rule 48(b). Accordingly, we must remand the case to the Superior Court so that the trial justice may conduct an evidentiary hearing on the motion and make a ruling supported by findings. If the trial justice finds that the delay in this case was necessary, the judgment will be affirmed in conformity with our resolution of defendant's other grounds of appeal. The defendant may, of course, bring an appeal to this court should the trial justice so rule, but on such appeal defendant may raise only those issues relating to the denial of his Rule 48(b) motion. If the trial justice finds that the delay was not necessary, the charge will be dismissed.

II

The defendant also apparently contends that he was denied due process by the trial justice's granting of a continuance at the request of the state on May 31, 1979. The state requested the continuance principally on the grounds that a material prosecution witness was not available. The state also noted at that time that the names of three possible witnesses for the state had not been furnished to defendant, which constituted a violation of Super.R.Crim.P. 16(a)(6).[1] The trial justice continued the case to June 20, 1979, over defendant's objection.

■■■ A motion for a continuance is addressed to the sound discretion of the trial

---

1. Rule 16(a)(6) of Super.R.Crim.P. requires the state to provide a defendant with a written list of the names and addresses of all persons whom the state expects to call as witnesses at the trial in support of the state's direct case.

justice, and his decision will not be overturned on appeal in the absence of an abuse of discretion. *State v. Allan*, R.I., 433 A.2d 222, 225 (1981); *State v. Dias*, 118 R.I. 499, 503–05, 374 A.2d 1028, 1029–30 (1977). Nevertheless, this court has noted that there may be occasions when a denial of a request for a continuance is so arbitrary that it violates the accused's Sixth Amendment right to procure the attendance of such witnesses and to obtain such evidence as may be necessary to permit a full defense. *State v. Levitt*, 118 R.I. 32, 41, 371 A.2d 596, 601 (1977); *State v. Carillo*, 113 R.I. 32, 39–40, 317 A.2d 449, 454 (1974); *State v. Patriarca*, 112 R.I. 14, 37–38, 308 A.2d 300, 315 (1973). In the instant case, however, the trial justice granted, rather than denied, a request for a continuance because of the unavailability of a prosecution witness. We fail to perceive how such a ruling in any way implicated defendant's constitutional right to obtain witnesses or evidence in his favor. On this record, defendant has failed to persuade us that the trial justice abused his discretion in granting the state's motion for a continuance.

### III

The defendant's next contention concerns the selection of the members of the jury pool. The list of the jury-pool members originally contained the names of fifty-three jurors, but the names of nineteen jurors had been "blacked out" before the list was furnished to defendant. The defendant did not object to or otherwise question the deletions, and a jury satisfactory to the parties was secured. The defendant now argues that his Sixth Amendment right to a fair and impartial trial by a jury was violated, apparently on the ground that the jurors whose names were deleted from the jury-pool list had been improperly excluded from the jury pool.

In order for a defendant to challenge the constitutionality of a petit jury, he must file a motion prior to trial pursuant to Rule 12(b)(2).[2] *State v. Caron*, R.I., 423 A.2d 823, 827 (1980); *State v. O'Coin*, R.I., 417 A.2d 310, 313 (1980). The record discloses that defendant did not file such a motion prior to trial. Failure to follow this procedure is traditionally considered a waiver by a defendant. *State v. Caron* and *State v. O'Coin*, both *supra.*

The defendant contends that he did not waive his right to challenge the constitution of the jury panel because he did not learn of the alleged illegalities until after the trial had taken place. The defendant, however, has failed to offer any reason why he could not have ascertained all of the facts necessary to present an objection to the court on this issue upon receipt of the jury list prior to trial. *State v. Morin*, R.I., 422 A.2d 1255, 1256 (1980); *cf. Francis v. Henderson*, 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149, 154–55 (1976) (Federal Rules); *Davis v. United States*, 411 U.S. 233, 243–44, 93 S.Ct. 1577, 1583, 36 L.Ed.2d 216, 225 (1973) (Federal Rules). Moreover, there is absolutely no evidence of prejudice to defendant from the alleged illegalities. *State v. Morin, supra; cf. Davis v. United States*, 411 U.S. at 244, 93 S.Ct. at 1583–84, 36 L.Ed.2d at 226 (showing of prejudice needed to obtain relief from effect of Rule). Accordingly, we find that defendant's failure to file a motion prior to trial pursuant to Rule 12(b)(2) precludes appellate review of this issue. *State v. Morin* and *State v. O'Coin*, both *supra.*

### IV

The defendant alleges that the trial justice erred in not granting defendant's motion for a judgment of acquittal. Essential-

---

2. Rule 12(b)(2) of Super.R.Crim.P. provides in pertinent part:

"The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. *Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver.*" (Emphasis added.)

ly, defendant's argument appears to be that the case should not have gone to the jury because the evidence showed only that defendant made errors in judgment in speeding and in attempting to pass the Cadillac on the right.

Conviction under the reckless-driving statute requires evidence that the defendant embarked on a course of conduct demonstrating a heedless indifference to the consequences of his act. *State v. Arnold*, R.I., 404 A.2d 490, 492 (1979); *State v. Lunt*, 106 R.I. 379, 382–83, 260 A.2d 149, 151–52 (1969). Mere error in judgment by a driver is not sufficient for conviction; neither is the negligence that could support a civil action on damages. *State v. Lunt, supra.*

When a motion for a judgment of acquittal is made, the trial justice must review only that evidence which the state claims affords the requisite basis for submitting the case to the jury. The trial justice is bound to review the evidence and the reasonable inferences of which it is susceptible in the light most favorable to the state. The motion should be granted if the evidence, so viewed and without regard either to its weight or to its credibility, is not sufficient to warrant a jury in finding that guilt has been established beyond a reasonable doubt. *E.g., State v. Golden*, R.I., 430 A.2d 433, 436 (1981).

In the instant case, uncontradicted evidence showed that defendant was driving his car at an excessive rate of speed. The defendant himself testified that he lost control of the car after being "cut off" while attempting to pass the Cadillac on the right, and that his car thereupon skidded across the width of Sandy Lane toward the Crane Street intersection, where it struck the victim. Viewed in a light most favorable to the prosecution, the evidence was more than sufficient to enable the jury to find that defendant's conduct demonstrated a heedless indifference to the consequences of his actions. Therefore, defendant's motion for judgment of acquittal was properly denied.

## V

The defendant next challenges the trial justice's denial of defendant's motion for a new trial. In ruling on such a motion, the trial justice must consider, in the exercise of his independent judgment, all of the material evidence and pass on its weight and the credibility of the witnesses. *State v. Barnes*, R.I., 409 A.2d 988, 992 (1979); *Barbato v. Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964). The trial justice must then determine whether the appropriate standard of proof in the case is met by what the trial justice perceives as the credible evidence. *State v. DaRocha*, R.I., 397 A.2d 500, 502 (1979). When seeking to prevail on the contention that the trial justice erred in denying a motion for a new trial, a defendant must persuade us that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Jefferson*, 116 R.I. 124, 130, 353 A.2d 190, 194 (1976).

In attempting to meet this burden, defendant initially contends that the trial justice overlooked material inconsistencies between the testimony of Thomas Williams and that of Ellen Cyronak. Specifically, defendant argues that whereas Williams testified that some distance before he reached the Crane Street junction he saw defendant's car cross over the center lines and travel on the westbound side of Sandy Lane as defendant passed another car, Cyronak stated that she made no such observation. In ruling on defendant's motion, the trial justice stated that he did not find the testimony of the two witnesses to be contradictory. We agree. The transcript does not reveal where Cyronak was on Sandy Lane in relation to the position of Williams at the time in question. Consequently, Cyronak simply may not have been in a position to observe the maneuver which Williams testified was performed by defendant.

The defendant further contends that the trial justice erred in denying the motion for a new trial because the evidence showed only that defendant committed an

error in judgment. We have carefully examined the trial justice's ruling on the motion and are convinced that he closely scrutinized the evidence and, in the exercise of his own independent judgment, passed upon the credibility of the witnesses and the weight to be given to their testimony. In his ruling he stated that he found the testimony of the key prosecution witnesses to be credible, and he concluded that their testimony was sufficient to establish beyond a reasonable doubt that defendant was guilty to the extent laid in the indictment. In such circumstances, we cannot conclude that it was error to deny defendant's motion for a new trial.

## VI

The defendant argues that he has been denied his Sixth Amendment right to a fair and impartial trial by jury because the trial justice made prejudicial remarks in his charge to the jury. After deliberating for several hours, the jurors notified the trial justice that they were unable to reach a verdict. The trial justice called the jurors to the courtroom and gave them supplemental instructions.[3]

The record reveals that after the jury retired to deliberate further, defense counsel stated: "Your Honor, for the record I would like to note my objection to the additional charge just given to the jury."

We do not reach the merits of defendant's contentions on this issue because, in our view, defendant's objections to the trial justice's supplemental charge failed to satisfy the requirements of Rule

---

**3.** The supplemental instructions contained the following language:

"When I charged you this morning, I told you that any verdict that you arrive at, whether it be guilty or not guilty, had to be unanimous, and I told you that almost every jury that sits almost always reaches a unanimous verdict in passing upon and openmindedly passing upon the evidence, and it has to be obvious to you that unless that happens our jury system would not work, and it does work. Again I told you that no one should surrender a firm conviction contrary to that of the others just to arrive at a unanimous verdict, and I ask no one of you to do anything that you cannot conscientiously do. But let me point out one thing to you. If you report a disagreement, an impasse; if you cannot reach a decision, another jury at a future date will have to sit through another trial of this case. That means that it would be a great expense upon the State of Rhode Island and upon the defendant to go through another trial, and I'm sure that no other jury that will be selected in the future would be better qualified to sit in judgment, to hear and decide this case, no better than you are. * * * I'm going to ask you to go in and fairly reconsider and appraise your individual positions, to have some further discussions among yourselves, to search your conscience and your own souls, regardless of what the verdict may be, and then have a discussion and see if at that point some of you will decide that perhaps you can be unanimous in your deliberations and in your verdict whatever that verdict may be."

This is essentially the same language as that included in the jury charges given in *State v. Patriarca*, 112 R.I. 14, 51–52, 308 A.2d 300, 321–22 (1973), and *State v. Boswell*, 73 R.I. 358, 366, 56 A.2d 196, 200 (1947), in which we held that the use of such language did not constitute an abuse of discretion by the trial justice. We reiterate our suggestion in *Patriarca* that the trial justices consider compliance with § 5.4(a) and (b) of the ABA Project on Minimum Standards for Criminal Justice, *Trial by Jury* (approved draft 1968). *See also State v. Souza*, R.I., 425 A.2d 893, 899–900 (1981). The final version of that section is Standard 15–4.4 of the ABA Standards for Criminal Justice, *Trial by Jury* (2d ed. 1980). Standard 15–4.4(a) provides that before deliberation the court may instruct the jury: (1) that in order to return a verdict, each juror must agree thereto; (2) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; (3) that each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with the other jurors; (4) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and (5) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict. Standard 15–4.4(b) provides that if it appears to the court that the jury has been unable to agree, the court may give or repeat those instructions set forth in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

30.[4] That rule expressly bars a party from assigning as error any portion of a charge or omission therefrom unless he specifically directs the trial justice's attention to the matter to which he objects and gives the ground for his objection. *State v. Cianci*, R.I., 430 A.2d 756, 764–65 (1981); *State v. Giordano*, R.I., 413 A.2d 93, 94, (1980); *State v. Hoyle*, R.I., 404 A.2d 69, 72 (1979). The objection must be placed on the record before the jury retires to consider its verdict and must be sufficiently specific to bring into focus the precise nature of the alleged error. *State v. Cianci*, R.I., 430 A.2d at 765; *State v. Hoyle*, R.I., 404 A.2d at 72.

In this case the defendant both failed to object to the charge before the jury retired to consider its verdict and neglected to specify the grounds for his objection. His failure to object properly to the supplemental charge on the grounds that he now alleges precludes the defendant from challenging the sufficiency of that charge on appeal. *State v. Cianci*, R.I., 430 A.2d at 765; *State v. Giordano*, R.I., 413 A.2d at 94.

## VII

■ The defendant argues that the trial justice's conduct during the course of the trial exhibited his bias in favor of the prosecution. Specifically, defendant contends that the trial justice acted improperly by questioning a defense witness, by excluding on his own motion a question propounded to a witness by defense counsel, and by assisting the prosecutor in her attempt to impeach the credibility of a defense witness. Close examination of the transcript fails to substantiate defendant's allegations of bias. The questions asked by the trial justice and the responses elicited served to clarify the evidence being presented. At no

time did the trial justice assume the role of an advocate, nor did his conduct indicate his belief regarding the credibility of the witness. *See State v. Amaral*, 47 R.I. 245, 249–51, 132 A.2d 547, 549–50 (1926). Similarly, the trial justice acted evenhandedly in excluding on his own motion questions asked of the witnesses, excluding questions propounded by the prosecutor, as well as those asked by defense counsel. Although the trial justice informed the prosecutor of the correct method of impeaching the credibility of a defense witness with a prior inconsistent statement, it is clear that he did so in order to ensure that the evidence was presented properly and accurately to the jury. Finally, even if harm resulted from the trial justice's conduct, it was rendered harmless because in his charge the trial justice admonished the jury that his rulings or comments did not reflect his opinion on the issues of the case. We find, therefore, that the trial justice maintained the requisite impartiality during the course of the trial.

## VIII

■ The defendant argues that the trial justice erred in allowing Officer James P. McGuire to testify as a witness for the prosecution because McGuire's name had not been provided in the state's response to defendant's discovery motion, as required by Rule 16. Rule 16(i) provides for the sanctions available to the court in the event that either party fails to make required disclosures:

"*If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule* or with an order issued pursuant to this rule, it may order

4. Rule 30 of Super.R.Crim.P. provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law set forth in the request. At the same time copies of such request shall be furnished to adverse parties. If a defendant relies upon an affirmative defense, or justification, or matter in mitigation and wishes the court to

instruct the jury with respect to such, he shall so advise the court in writing no later than at the close of the evidence. *No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.* Objections shall be made out of the presence of the jury." (Emphasis added.)

such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such order as it deems appropriate." (Emphasis added.)

Although the state concedes in its brief that it omitted McGuire's name in its response to defendant's discovery motion in violation of Rule 16, a careful review of the trial transcript reveals that defense counsel never brought this fact to the attention of the court. Because defendant never provided the trial justice with an opportunity to impose any of the sanctions for noncompliance outlined in Rule 16(i), he waived his right to raise this issue on appeal. *Cf. State v. Duggan*, R.I., 414 A.2d 788, 791 (1980) (this court will not review objections to evidence which were not raised at trial).

## IX

The defendant finally takes issue with the trial justice's refusal to give defendant's requested charge, which included the following statement:

"[I]n determining whether or not the accused was culpably negligent under all the circumstances of this case, you shall take into consideration the conduct of the deceased in operating her bicycle on Sandy Lane at the time of the accident."

The trial justice denied defendant's request without explanation, and made the following remarks in his charge:

"In this case we are not concerned with the behavior of the decedent, Lorraine Yatsko, in the operation of her bicycle even if the decedent, Lorraine Yatsko, was reckless and contributed to her death, it is of no consequence, and it is your duty to weigh the evidence and to determine if the state has proven beyond a reasonable doubt that the conduct of

the accused was the proximate cause of her death, according to the instructions in this case."

The defendant contends that the trial justice committed reversible error in his charge because he instructed the jurors not to consider the decedent's conduct in determining defendant's guilt. We disagree.

Our decision in *State v. SanAntonio*, 97 R.I. 48, 195 A.2d 538 (1963), is instructive on this issue. In that case, which was also a prosecution for driving to endanger, death resulting, the defendant took exception to a protion of the charge which contained language very similar to that complained of in the instant case.[5] The *SanAntonio* court found no reversible error in the charge, stating:

"If the trial justice's language is considered in the context of his charge as a whole it is clear that he was instructing the jury to the effect that if they found from the evidence that the accused was negligent to the extent laid in the indictment they were not to be concerned with the question whether the decedent was also negligent and thereby contributed to his death. This is substantially the view of the law taken by all courts in a case of this kind. In fact it is universally held that whether the decedent's own reckless conduct contributed to his death is of no consequence so long as the evidence shows that the conduct of the accused was a proximate cause of such death." *Id.* at 53, 195 A.2d at 540.

We interpret *SanAntonio* to require that, in determining whether the defendant's conduct is reckless within the meaning of the statute, the jury may consider the entire situation, including the conduct of the decedent if it had a bearing on the defendant's conduct. The jury may also take into account all the circumstances, including the decedent's conduct if relevant, when determining if the unlawful conduct

5. The trial justice in *State v. SanAntonio*, 97 R.I. 48, 53, 195 A.2d 538, 540 (1963), made the following statement in his charge:

"We are not concerned with the behavior of [the decedent] in crossing that highway.

Even if you did think that this accident was caused because of the careless operation of [the decedent] as well as that of the defendant, that has nothing to do with this case."

of the accused was a proximate cause of the death. Once the jury finds that the defendant was reckless and that his recklessness proximately caused the death, the decedent's conduct becomes irrelevant. Negligence on the part of the decedent, therefore, is not a defense to culpability in cases of this kind, unless such negligence can be shown to be the sole proximate cause of the death. Negligence of the decedent, however, *may* be a relevant factor to be considered on the questions of whether the defendant's conduct was reckless or whether such conduct proximately caused the death.

The defendant's request to charge falls far short of expressing the applicable law. Essentially, he claims that the deceased's failure to look up as she rode her bicycle along the westerly curb of Sandy Lane amounted to contributory negligence that in turn exculpates his actions. However, the *SanAntonio* case makes clear that contributory negligence is not a defense to a charge of vehicular homicide which is a proximate result of the reckless operation of a motor vehicle. The critical issue in the case at bar, therefore, is whether the manner in which defendant operated his motor vehicle was a proximate cause of the bicyclist's death.

 When one drives a motor vehicle in violation of the criminal law pertaining to the operation of such a vehicle on a public highway and, in doing so, causes the death of another, the deceased's negligence is irrelevant absent evidence that would support a finding that the deceased's conduct amounted to an independent intervening cause. *People v. French*, 77 Cal.App.3d 511, 524, 143 Cal.Rptr. 782, 789 (1978); *People v. Black*, 111 Cal.App. 90, 93, 295 P. 87, 88 (1931); *People v. Dunhill*, 40 Colo.App. 137, 570 P.2d 1097, 1098 (1977); *State v. Rotella*, 196 Neb. 741, 744, 246 N.W.2d 74, 76 (1976); *see also* 15 Blashfield, *Automobile Law and Practice* § 490.77 at 397–98 (3d ed. 1969); 1 Wharton, *Criminal Law* § 47 at 235–37 (14th ed. 1978).

The doctrine of independent intervening cause recognizes that there may be concurrent proximate causes that contribute to an individual's injuries or death and that a person's misconduct is not always rendered remote in the causal sense because of the intervening of a second cause. If the independent or intervening cause is reasonably foreseeable, the causal connection remains unbroken. *Evans v. Liguori*, 118 R.I. 389, 395 n.2, 374 A.2d 774, 777 n.2 (1977); *Roberts v. Kettelle*, 116 R.I. 283, 295, 356 A.2d 207, 215 (1976). In other words, before the trial justice is obligated to charge the jury regarding the consideration that may be given to the deceased's conduct in a case such as the one at bar, evidence must have been introduced which would indicate that the deceased's conduct was the sole cause of her death and that the defendant's conduct had nothing to do with the fatality. *State v. Betts*, 214 Kan. 271, 278, 519 P.2d 655, 661 (1974). Here, defendant acknowledged his fault, but his request failed to take into consideration the applicable law; and even if it had, there is no evidence that would support a reasonable inference that the bicyclist's failure to notice defendant's vehicle was the sole cause of her demise.

We have carefully considered the defendant's remaining assignments of error and find them to be without merit.

The case is remanded to the Superior Court for an evidentiary hearing in accordance with part I of this opinion.